**JOHNSON CREATIVE ARTS, INC.,**
Plaintiff, Appellant,

v.

**WOOL MASTERS, INC., et al.,**
Defendants, Appellees.

No. 83–1927.

United States Court of Appeals,
First Circuit.

Argued April 3, 1984.

Decided Sept. 6, 1984.

Robert M. Newbury, Chicago, Ill., with whom Maureen O. Hurley, Chicago, Ill., John M. Kahn, Boston, Mass., Pattishall, McAuliffe & Hofstetter, Chicago, Ill., and Hill & Barlow, Boston, Mass., were on brief, for plaintiff, appellant.

John J. Jones, Hightstown, N.J. with whom Stuart T. Rossman, and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for defendants, appellees Wool

Masters, Inc., Robert M. Keyes, and Cesar H. Guerrero.

Before BOWNES and ALDRICH, Circuit Judges, and HUNTER,* Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

Appellant brought suit to enjoin false representations in violation of the Trademark Laws of the United States, 15 U.S.C. § 1125(a), and for breach of contract and unfair competition. The complaint alleged that defendants Wool Masters, a New York Corporation, and Robert Keyes, part owner of Wool Masters, individually, encouraged and enabled retail outlets to substitute or pass off Wool Masters' yarn on calls or orders for plaintiffs' yarn. Two Massachusetts retailers were also made defendants. The district court dismissed the case against Wool Masters and Keyes for improper venue. The Court allowed plaintiff thirty days to move for a transfer. Plaintiff failed to so move and now appeals the dismissal. Appellant claims the district court erred in finding the defendants were not "doing business" in the district of Massachusetts for purposes of 28 U.S.C. § 1391(c)[1] and in finding that the claim did not arise there under 28 U.S.C. § 1391(b).

■ Appellant contends that the test for "doing business" under the venue statute should be the same as the test for determining whether a corporation is amenable to service of process. This view is not without well-respected authority. Professor Moore wrote:

And although the matter is not free from doubt, ... we believe that if a corporation is amenable to service of process it

should be held to be "doing business" for venue purposes .... If it is not unfair to subject the corporation to the court's jurisdiction by service of process, it seems wise and not unfair to hold that there is a proper venue, particularly when the case can be transferred to another venue, if convenience warrants.

1 Moore's Federal Practice ¶ 0.142 [5.–1–3], at 1411. Professors Wright, Miller, and Cooper appear to agree:

There is much to be said for the view that if a corporation is doing enough business in a district to satisfy the constitutional tests on when it may be subjected to process there, that district should be a proper venue.

.    .    .    .    .

What is thought to be the better view, although many courts disagree, is that it should be enough that the corporation has such contacts with the district as would satisfy the constitutional tests on when it may be subjected to process there.

15 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 3811, at 65–69.

While such authority cannot lightly be rejected, we cannot accept the argument because the considerations underlying personal jurisdiction are not the same as those underlying venue. The minimum contacts test for personal jurisdiction is based on the *minimum* amount of "fairness" required in order to comport with due process. Venue limitations generally are added by Congress to insure a defendant a fair location for trial and to protect him from inconvenient litigation.

---

* Of the Western District of Missouri, sitting by designation.

1. 28 U.S.C. § 1391 provides in pertinent part: (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law. (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes. Although § 1391(c) speaks only to when venue is proper for corporate defendants, appellants do not make any distinction between the corporate and individual defendants. Our discussion of "doing business" pertains only to the corporation, Wool Masters.

At the outset it must be understood that "minimum contacts" with a particular district or state for purposes of personal jurisdiction is not a limitation imposed on the federal courts in a federal question [2] case by due process concerns. The Constitution does not require the federal districts to follow state boundaries. *Driver v. Helms,* 577 F.2d 147, 156 (1st Cir.1978); *rev'd on other grounds, Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (reversed on statutory construction, constitutional issue not reached). The limitation is imposed by the Federal Rules of Civil Procedure. It is clear that Congress can provide for nationwide service of process in federal court for federal question cases without falling short of the requirements of due process.[3] Rule 4(f) generally limits the service of process of federal district courts to the territorial limits of the state in which the court is held. Rule 4(e) allows for service outside the state when authorized by a statute of the United States or when a statute or rule of court of the state in which the district court is held provides for such service.

The state statutes referred to cannot provide for service of process on a defendant outside the respective states unless the defendant has had the contact with that state that is required by the fourteenth amendment. *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958). It is the reference to the "longarm" statutes of the various states that incorporates the requirement of minimum contacts as a precondition for extraterritorial service of process.

Since due process would allow a federal court in a federal question case to issue service of process nationwide, and does not require that a corporation have any contact with a particular district in order to be sued there, we cannot accept the proposition that venue is proper in any district in which a corporate defendant constitutionally could be subjected to service. Under this argument, venue would be proper in any district in the United States in a case wherein a defendant has had "minimum contacts" with any part of the United States.[4]

---

2. We express no view on the exercise of personal jurisdiction in a case where the basis of subject matter jurisdiction is diversity of citizenship. *See National Equipment Rental v. Szukhent,* 375 U.S. 311, 330–31, 84 S.Ct. 411, 422–23, 11 L.Ed.2d 354 (1964) (Black, J., dissenting).

3. The minimum contacts concept is grounded upon notions of territorial limitations on the power of the courts of a particular state to subject a nonresident to its jurisdiction and thereby infringe upon that person's individual liberty interest. *See Insurance Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982). The traditional, historical basis of personal jurisdiction was the court's de facto power over the defendant's person. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). If a defendant was present within the territory of the sovereign represented by the court, the court could issue a writ to the sheriff, directing him to take the body of the defendant and keep him in custody to answer the plaintiff's charges. *See id.* In *International Shoe,* the Court determined that since the capias ad respondendum has given way to personal service of summons or other form of notice, even a person not present within the territory of the forum may be subjected to a judgment in personam if he has such contacts

with the forum that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* This allows a court validly to effect extraterritorial service. If a person is served *within* the territory of the sovereign represented by the issuing court, there is no question that maintenance of the suit against him will not offend traditional notions of fairness. Indeed, the "minimum contacts" concept does not seem particularly relevant in evaluating the validity of service that was not extraterritorial. *Mariash v. Morrill,* 496 F.2d 1138 (2d Cir.1974). The United States does not lose sovereignty when a state's border is crossed. *Driver v. Helms,* 577 F.2d 147, 156 (1st Cir.1978), *rev'd on other grounds, Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (reversed on statutory construction, constitutional issue not reached); *United States v. Union Pacific R.R. Co.,* 98 U.S. 569, 603–04 (8 Otto 569), 25 L.Ed. 143 (1878). Thus Congress can "provide for service anywhere in the United States." *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 442, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946).

4. Even under existing rules, a corporation may be subject to service in a district in which it conducts no business whatsoever. In a multidistrict state, a corporation with "contacts" with only one district of the state may be subject to

■ Appellant's authorities are probably more properly read to espouse the more limited view that the test for whether a corporation is "doing business" in a district for venue purposes should be the same as the standard for determining whether a corporation is amenable to service under "transacting business" language in state longarm statutes as limited by the fourteenth amendment. The rationale for this view appears to be that if a corporation's activities within a district make it "fair" (viz., not offensive to traditional notions of fair play and substantial justice) to subject a corporation to service of process of the state in which the district is located, it is not "unfair" to require the corporation to defend a suit there.[5] *See Houston Fearless Corporation v. Teter,* 318 F.2d 822 (10th Cir.1963). However, the concept of "fairness" involved in the jurisdictional analysis involves considerations other than the convenience of the defendant. Part of the due process equation involved in the minimum contacts standard is whether a defendant's activities relating to a particular state are such as to give that state a legitimate interest in holding a defendant answerable on a claim related to those activities. *Keeton v. Hustler Magazine, Inc.,* — U.S. —, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Convenience of location is not determinative.

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another state ... [and] even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980); *see Insurance*

*Corp. v. Compagnie`des Bauxites,* 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982). Conversely, inconvenience to the defendant will not defeat a finding that the defendant is amenable to service of process. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 224, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). "The test to determine whether a defendant may be brought before a state's courts, say the courts of Rhode Island, is not different whether the defendant is found in Connecticut or in Hawaii." *Driver v. Helms,* 577 F.2d at 156 n. 25.

■ Venue, though a statutory requirement, is based on Congress' decision concerning where a case *should* be heard. It is a privilege given to the defendant primarily as a matter of convenience and is not based on an inherent power of a particular court over the parties. *Neirbo v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939). In general, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place for trial. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716–17, 61 L.Ed.2d 464 (1979). Longarm statutes, and extraterritorial service through the concept of minimum contacts, on the other hand, allow a defendant to be haled into a distant court to allow a state to protect *its* interests, *see Hustler,* — U.S. —, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and the interests of *plaintiffs, see McGee,* 355 U.S. at 222, 78 S.Ct. at 200, to the extent that doing so is not so unfair as to deny a defendant due process of law.

The business contact required under language in state longarm statutes, as restricted by the fourteenth amendment, to subject a corporation to service and which determines where a case *may* be brought has no necessary connection with the busi-

---

the process of a district court of another district. Under any interpretation of "doing business" under § 1391(c), however, venue would be improper in the second district.

**5.** While this statement is superficially appealing, it is merely a tautology. The test for whether it is "fair" to subject a corporation to service of process *is* whether it is "fair" to require the corporation to defend a suit there. *See International Shoe,* 326 U.S. at 319, 66 S.Ct. at 160.

ness contact required by Congress for proper venue. Although both the due process requirement of minimum contacts and the statutory venue provision are concerned, to some extent, with "fairness" to the defendant, the minimum contacts formula only measures the minimum amount of "fairness" required by the Constitution for a state to exercise extraterritorial jurisdiction. The fact that a particular court's assertion of personal jurisdiction is not so "unfair" as to deny a defendant due process does not necessarily mean that to hold trial there is "fair" in the sense contemplated by Congress in the venue statute. The two concepts are independent of each other and must be interpreted with their respective underlying objectives and rationales in mind. *See Time, Inc. v. Manning,* 366 F.2d 690, 696 (5th Cir.1966); *Honda Associates, Inc., v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889 (S.D.N.Y.1974).

█ In addition to equating due process minimum "fairness" and congressional notions of convenience, appellant's argument fails to take into consideration that the "minimum contacts" personal jurisdiction formula generally requires that the obligation sued on "arise out of or [be] ... connected with the activities within the state." *See International Shoe,* 326 U.S. at 319, 66 S.Ct. at 160. Section 1391(c) places venue in a suit against a corporation in "any judicial district in which it is ... doing business." Such a district is to be regarded as the residence of the corporation for venue purposes. There is no indication that venue under this provision should be dependent on the substance of the claim. *Cf.* 28 U.S.C. § 1391(b) (venue proper in the district "in which the claim arose"). If a corporation is "doing business" in a district, that district is its residence for venue purposes, and if personal jurisdiction can

be obtained, the corporation may be sued there without regard to whether the claim sued on is related to business done there. A construction of "doing business" that requires a connection between the claim sued on and the business "done" strains the language of § 1391(c) beyond recognition. A construction of "doing business" based on amount of contacts with a district without regard to whether the claim is related to business activities within the district substantially alters the minimum contacts equation [6] and has not been argued by the appellant.

After deciding that the test for "doing business" under § 1391(c) should not be the same as the "minimum contacts" test for personal jurisdiction, the more difficult job of formulating a workable test to determine what business activity is necessary remains. The district court noted that "most of the cases that have differentiated between 'transacting business' for personal jurisdiction and 'doing business' for federal venue have been unable to articulate a workable test for determining when a corporate defendant is 'doing business' in a particular district." *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 573 F.Supp. 1106, 1114 (1983). While declining to articulate the precise test by which the corporation's activities should be measured for venue purposes, the court found that Wool Masters' activities in Massachusetts did not give rise to proper venue there. We agree.

Before the 1948 revision of the Judicial Code, there was no special provision for venue in suits against corporations. 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3811 at 54. Under the general provision allowing suit against a defendant in the district in which "he is an

---

**6.** Substantially greater contacts are required to allow a state to take jurisdiction over a corporation on causes of action unrelated to the corporation's activity within the state. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 446–47, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952). If a "minimum contacts" type of test is to be used to determine whether a corporation is "doing business" in a district, this test would appear to

be more appropriate than the test for whether exercise of jurisdiction under a longarm statute is valid. However, if this "version" of the minimum contacts formula were to be used to determine when a corporation is "doing business" in a district for venue purposes, it is possible that problems similar to those attending the "*Neirbo* Rule," *see infra,* could arise.

inhabitant," a corporation could be sued only in the state in which it was incorporated even though it was engaged in business in another state. *See Seaboard Rice Milling Co. v. Chicago, Rock Island & Pacific Railway Co.*, 270 U.S. 363, 366, 46 S.Ct. 247, 248, 70 L.Ed. 633. The first major step away from this rigid view of corporate residence was in *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939).

In *Neirbo,* the Supreme Court held that a corporation could be sued in the federal courts in any state in which the corporation had designated an agent for service of process in voluntary compliance with that state's foreign corporation laws. The *Neirbo* rule, which was based on consent to be sued, left many questions unanswered and led to some legal anomalies. *See* 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3811, at 56. For example, it was held that venue was improper as against a foreign corporation doing business within the state if it had not designated an agent for service of process even though the extent of business done there by the corporation was such that state law required such a designation. *Moss v. Atlantic Coast Line R. Co.*, 149 F.2d 701 (2d Cir.1945). Thus, law abiding corporations waived their venue privilege while corporations that refused to obey state law could assert a venue defense. *Remington Rand,*

*Inc. v. Knapp-Monarch Co.*, 139 F.Supp. 613, 616 (E.D.Pa.1956). Another anomaly arose in *Suttle v. Reich Brothers Const. Co.*, 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614 (1948). In *Suttle* the Court made it clear that the *Neirbo* decision was based on waiver of privilege and not on an expansion of the term "residence." [7] *Id.* at 164, 68 S.Ct. at 589. "Residence" of a corporation under the venue statute was still only in the "State and district in which it has been incorporated." *Id.* at 166, 68 S.Ct. at 589. If the residence requirements were to be changed it was a task to "be undertaken by Congress." *Id.* at 168, 68 S.Ct. at 590.

The following year, upon revision of the Judicial Code, Congress in effect wrote the *Neirbo* rule into the venue statute, and extended "the philosophy of that case to the act of doing business." *Ruth v. Eagle-Picher Co.*, 225 F.2d 572, 577 (10th Cir. 1955). It also made clear that the place of licensing and doing business was to be considered the residence of the corporation in cases such as *Suttle. See* 28 U.S.C. § 1391(c). These changes were not considered major or controversial. It does not appear that Congress intended to make any sweeping change [8] by its inclusion of the words "or is doing business." [9] Rather, it appears that Congress altered the language of the statute in an attempt to rectify some of the anomalies produced by the *Neirbo* rule.

**7.** In *Suttle,* a suit based on diversity was brought in the Eastern District of Louisiana against a Texas corporation and individual parties whose residence was in the Western District of Louisiana. Venue would have been proper for all parties if the Texas corporation could be considered a "resident" of the Eastern District. Although the Texas corporation had qualified to do business under Louisiana law and was thus subject to suit in any district in Louisiana under the *Neirbo* rule, this fact did not make the Eastern District of Louisiana the "residence" of the Texas corporation. Thus, venue was improper for the noncorporate defendants.

**8.** If appellant's argument were accepted, it would mean that "or is doing business" changed the place of "residence" of a corporation from the "state and district in which it has been incorporated," *see Suttle,* 333 U.S. at 164, 68 S.Ct. at 588, to any state or district with which

the corporation has had as little contact as mailing a reinsurance contract there. *See McGee,* 355 U.S. at 221, 78 S.Ct. at 200.

**9.** "Doing business" was not a new term. By the time § 1391(c) was passed, "carrying on business" or "doing of business" had taken on a rather technical, limited meaning under requirements that a corporation be "found" or "present" in the district in which suit was brought for venue or jurisdictional purposes. *See Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 371, 47 S.Ct. 400, 402, 71 L.Ed. 684 (1927). The term was also used to determine when a state could impose restrictions on corporate activity. Although a state could not regulate a corporation involved solely in interstate commerce, it could place restrictions on corporations "doing business" in that state. *See Interstate Amusement Co. v. Albert,* 239 U.S. 560, 36 S.Ct. 168, 60 L.Ed. 439 (1916).

Although "or is doing business" appears to have been inserted to put corporations violating state registration laws in the same position as conforming corporations, the test for federal venue should be a uniform, federal test not dependent on the vagaries of state licensing laws. *Remington Rand, Inc. v. Knapp-Monarch Co.,* 139 F.Supp. 613, 617 (E.D.Pa.1956). Indeed, the need for uniformity appears to be the primary rationale for appellant's position. *See* 1 Moore's Federal Practice ¶ 0.142[5.–1–3], at 1411; 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3811, at 64–65. To achieve uniformity, however, it is not necessary to sacrifice the basic principles of venue.

The search for a uniform test has led some courts to decide that a corporation is "doing business" for purposes of § 1391(c) if its activities within the district are such that "some state would probably" require the foreign corporation to be licensed as a condition precedent to doing that degree of business within its borders. *See e.g., Remington Rand,* 139 F.Supp. at 620–621. This test, however, has been found to be somewhat amorphous and difficult to apply. *See Smith v. Avco-Lycoming,* 497 F.Supp. 622 (E.D.Pa.1980). We agree with the *Remington Rand* case to the extent that it stands for the proposition that "doing business" as used in the federal venue statute requires some kind of localization of the corporation. We also agree, however, that a more workable test is needed.

As discussed above, the purpose of including "doing business" under § 1391(c) was to remove the advantage a corporation could gain by failing to comply with state registration laws. To achieve this immediate purpose it is only necessary to find that a corporation is "doing business" under § 1391(c) if it is doing such business there that the state in which the district is located would require the corporation to obtain a license or register. In order to achieve the section's purpose and to have a uniform test for venue throughout the United States, however, the test of "doing business" must be as inclusive as the most demanding of the states' corporate qualification statutes. Therefore, it is necessary to look to the extent of a state's power to impose such restrictions.

■■■■ The Commerce Clause places a limitation on when a state may require a foreign corporation to obtain a license to do business in that state. *Allenberg Cotton Co., Inc. v. Pittman,* 419 U.S. 20, 31–32, 95 S.Ct. 260, 266–267, 42 L.Ed.2d 195 (1974). A state may not require a foreign corporation to qualify to do business absent some kind of intrastate activity or localization [10] of the business in that state. *Id.* at 33, 95 S.Ct. at 267, 42 L.Ed.2d 195. The purposes of the Act will be fulfilled and uniformity will be achieved if "doing business" in a district for purposes of § 1391(c) is read to mean engaging in transactions there to such an extent and of such a nature that the state in which the district is located *could* require the foreign corporation to qualify to "do business" there.[11] This reading solves the problem of the noncompliant corporation as raised in *Moss.* If no state could require licensure for a particu-

---

**10.** The Supreme Court rejected a state court finding that a corporation was "doing business" in Mississippi when it had no offices or warehouses there, no employees soliciting business or operating there on a regular basis, and when the transactions in question were in the stream of interstate commerce and conducted primarily through the mail. *Allenberg,* 419 U.S. at 33, 95 S.Ct. at 267.

**11.** Appellants could argue that the Commerce Clause is an inappropriate source for the test to be applied since it is not as directly concerned as the Due Process provision is with "fairness" to a defendant. Our investigation, however, is into what Congress meant by "doing business,"

not into what would be a marginally fair test for venue if we were writing on a clean slate, or whether Congress' designation of venue comports with constitutional mandates of "fairness." In § 1391(c), Congress decreed that licensing approximates the degree of association between a corporation and a district that will give rise to proper venue. The Commerce Clause limitation on licensing requirements is used as the test for "doing business" not because it is inherently concerned with fairness in litigation, but because it sets the minimum amount of activity necessary to require a corporation to obtain a license from a particular state.

lar activity, there is no danger that a corporation engaging in such activity could decrease its venue exposure by violating state law. This reading also comports with the overall convenience considerations behind the venue statute. If a corporation is engaged in business that is subject to state qualification, it has "localized" its business within the district, making its defense of an action there less inconvenient.

■ In the case before us the appellant claims that Wool Masters is "doing business" in the District of Massachusetts in that it solicited business there by mail, received orders from there both by phone and by mail, regularly shipped goods to Massachusetts retailers for resale there to consumers, and received payment for the shipped goods. At the time the complaint was filed Wool Masters had sold approximately $8,800 worth of goods to Massachusetts retailers. Appellant also adds that Wool Masters' president had recently attended a trade show in Massachusetts.

There can be no doubt that no state could require Wool Masters to qualify as a foreign corporation in order to distribute its goods in this manner. This is precisely the type of activity that does not amount to "doing business" in the solicited forum. *See Allenberg Cotton,* 419 U.S. at 33, 95 S.Ct. at 267. Wool Masters had no office or warehouse in Massachusetts. Neither did it have employees working there on a regular basis. As far as we can determine, all of the orders from Massachusetts were taken and solicited by phone or mail. All of Wool Masters' operations are located in New York. A finding of proper venue under the "doing business" provision of § 1391(c) in the District of Massachusetts under these circumstances would sacrifice the convenience considerations behind the venue statute without furthering any legitimate purpose or congressional intent. Wool Masters is not "doing business" in the district of Massachusetts for purposes of the general venue statute.

■ The district court also found that venue was not proper under the "claim arose" provision of § 1391(b). Appellant contends that the "claim arose" in Massachusetts because some of Wool Masters' goods were sold there and because plaintiff and two other defendants are located there. Appellant cites no authority to support its argument and this Court has found none. In *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court considered the possibility that a claim might arise in more than one district.

> [I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts .... In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between two (or conceivably even more) districts that with approximately equal plausibility in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff) may be assigned as the locus of the claim.

*Id.* at 185, 99 S.Ct. at 2717 (emphasis in original). We take this as indicating that residence of the plaintiff should be of little consequence to a finding of where the claim arose in this case. We also see no reason why the fact that two other defendants reside in Massachusetts should have any bearing on the dismissal of the claim for lack of venue as to Wool Masters and Keyes.

Furthermore, although Wool Masters did sell goods to retailers in Massachusetts, it sold goods to many retailers in many states; Massachusetts sales amounted to only six to fourteen percent of total sales. The complaint is based on Wool Masters' sales throughout the country, and the requested relief includes a blanket injunction and damages with respect to those sales. The claim on which appellant seeks relief from Wool Masters arose no more in Massachusetts than in any one of the many

districts into which Wool Masters sent their products. Virtually all of the decisions and actions on the part of Wool Masters took place in the Southern District of New York. It is clear that the claim against Wool Masters and Keyes must be brought in the Southern District of New York if it is to be brought anywhere, for that is the district which can most plausibly be assigned as the locus of the claim, in comparison with Massachusetts or any other district into which goods were merely sent. *See Leroy,* 443 U.S. at 186, 99 S.Ct. at 2718.

The judgment of the district court is affirmed.