652 F.Supp. 56 (1986)
CRITZAS INDUSTRIES, INC., Plaintiff,
v.
WATERWAY-CREVE COEUR, INC., and Eclectic Products, Inc., Defendants.
No. 85-1166C(5).
United States District Court, E.D. Missouri, E.D.
April 11, 1986.
*57 Polster, Polster and Lucchesi, Lionel L. Lucchesi, Gregory E. Upchurch, St. Louis, Mo., for plaintiff.
Popkin, Stern, Heifetz, Lurie, Sheehan, Reby & Chervitz, Richard J. Sheehan, David Sobelm, St. Louis, Mo., for defendant Waterway-Creve Coeur.
Knobbe, Martens, Olson & Bear, Lowell Anderson, Newport Beach, Cal., and Lewis & Rice, Jeffrey B. Hunt, St. Louis, Mo., for defendant Eclectic Products.

MEMORANDUM
LIMBAUGH, District Judge.
This cause is before the Court on defendant Eclectic Products' motion to dismiss for lack of venue or, in the alternative, to transfer. Both the plaintiff and Eclectic have fully briefed their positions.
Plaintiff Critzas Industries brings this six-count civil action against defendants Waterway-Creve Coeur, Eclectic Products and Tim Hobbs.[1] Plaintiff Critzas and defendant *58 Waterway Creve-Coeur are Missouri corporations having their principal places of business in Missouri. Defendant Eclectic is a California corporation with its principal place of business in that state. Defendant Tim Hobbs is a Missouri resident. Critzas claims the defendants are violating its trademark rights in a product named "Goop," a multi-purpose cleaner. Apparently, Eclectic manufactures and distributes an adhesive product which has a variety of names, all of which contain the word "goop," e.g., "Shoe Goop." Critzas alleges that defendants Hobbs and Waterway have purchased and re-sold Eclectic's "goop" products.
Plaintiff bases its venue allegations on 28 U.S.C. § 1391(b) and (c). Since subject matter jurisdiction in this case does not rest solely on diversity of citizenship, venue is proper in any district where all the defendants reside and in the district in which the claim arose. 28 U.S.C. § 1391(b). The plaintiff claims venue is proper in the Eastern District of Missouri because its claims arose in this district and because all the defendants reside here. As to the second basis for venue, Critzas alleges that Eclectic is a resident of the Eastern District of Missouri because it is "doing business" here. See 28 U.S.C. § 1391(c).

"Claim Arose"
The plaintiff's complaint against Eclectic is, in a sense, a transitory action since defendant sells its "goop" products in a large number of states. A relatively small number of these sales occur in Missouri. In the past nine years, Eclectic has sold in Missouri products valued at approximately $9,600.00, out of total sales of $2,000,000.00. The Missouri sales, then, represent less than one-half of one percent of Eclectic's total sales. In contrast, Eclectic's California sales represent twenty percent of its total sales. Eclectic has no offices, officers or phone listings in Missouri, and is not licensed to do business in this state. Even if, as plaintiff alleges, Eclectic has recently increased its sales activities in Missouri, this state is not one of Eclectic's key markets.
In deciding whether the claim brought by Critzas arose in the Eastern District of Missouri, the Court must look primarily to the seminal case in this area, Leroy v. Great Western United Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). There, the Supreme Court noted that Congress, when adding the "claim arose" language to § 1391(b), "did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." Id. at 185, 99 S.Ct. at 2717, citing Denver & R.G.W.R. Co. v. Railroad Trainmen, 387 U.S. 556, 560, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967). The Court established an extremely narrow construction of "claim arose," noting
In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility  in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)  may be assigned as the locus of the claim.
Id. 443 U.S. at 185, 99 S.Ct. at 2717.
In recent decisions, the First Circuit and the District of Columbia Circuit have applied the general principles established in Leroy to trademark infringement cases. The First Circuit in Johnson Creative Arts v. Wool Masters, 743 F.2d 947 (1st Cir. 1984); found, on facts similar to those here, that venue was improper in Massachusetts. In that case, a Massachusetts *59 plaintiff brought a trademark suit in Massachusetts against two Massachusetts retailers and two New York defendants. In sustaining the New York defendants' motion to dismiss for improper venue, the Court found that as to these defendants the plaintiff's cause of action did not arise in Massachusetts because their Massachusetts sales amounted to only between six and fourteen percent of their total sales. Id. at 955. The Court based its decision largely on an application of the principles established by the Supreme Court in Leroy. Id.
The District of Columbia Circuit gave the "claim arose" language similar construction in Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurants, 760 F.2d 312 (D.C.Cir.1985) ("Noxell I"); see also "Noxell II," 771 F.2d 521 (D.C.Cir.1985) (holding in Noxell I approved in decision assessing attorneys' fees against plaintiff). The plaintiff in Noxell brought a trademark infringement suit in the District of Columbia even though that area accounted for less than one and one-half percent of the defendant's total sales. In contrast, the defendant made forty percent of its sales in California. In remanding the action to the district court with instructions to dismiss it, the D.C. Circuit found the Supreme Court's decision in Leroy to be definitive and particularly applicable to trademark infringement cases. 760 F.2d at 315-17.
These decisions establish that a plaintiff in a trademark action cannot bring suit in its home state under the "claim arose" language simply because some of the suspect transactions occurred in that state. The cases' factual similarity to the situation here makes their holdings and rationale extremely compelling.
Plaintiff argues that Noxell and Wool Masters conflict with the Eighth Circuit's interpretations of the "claim arose" language in contexts other than trademark actions. Two of these Eighth Circuit decisions, Gardner Engineering Corp. v. Page Engineering Corp., 484 F.2d 27 (8th Cir. 1973), and Cochrane v. Iowa Beef Processors, 596 F.2d 254 (8th Cir.1979) cert. denied 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979) are clearly dated since each rests on the principle that the plaintiff's convenience is the key consideration when a court construes a venue statute. See 484 F.2d at 33 and 596 F.2d at 261. In Leroy, the Supreme Court specifically states that the plaintiff's convenience is irrelevant to venue consideration. 443 U.S. at 185, 99 S.Ct. at 2717.
Plaintiff also cites an Eighth Circuit decision, In Re Nine Mile, 692 F.2d 56 (8th Cir.1982); as evidence that the Eighth Circuit, even after Leroy, views the "claim arose" language in the venue statute as a broadening device which Congress inserted to provide for greater flexibility for aggrieved parties. The Eighth Circuit's discussion of the "claim arose" language, though, occurs in dictum in a footnote. Id. at 60 (footnote 6). Of note too, the breach of contract/breach of fiduciary duty action in Nine Mile differs dramatically from the transitory trademark action before the Court. The underlying events in Nine Mile occurred in only two or, at most, three states. Here, the events giving rise to plaintiff's causes of action occurred in a large number of states, and no place in particular. The policies delineated in Leroy have more significance in actions where, as here, the transitory nature of the alleged wrongful acts would allow the plaintiff to forum shop if a court were to broadly construe the term "claim arose." Finally, the Eighth Circuit's "c.f." citation to Leroy surely cannot mean the Court, while noting a relevant Supreme Court decision, has taken an alternative approach to the "claim arose" language in § 1391.
Under the principles set forth in Leroy and applied to trademark infringement actions in Wool Masters and Noxell, if Eclectic were the only defendant named in plaintiff's suit, venue would unquestionably not be proper in this district. But, another portion of the Leroy decision, in which the Supreme Court discusses the history of the "claim arose" phrase in § 1391(b), suggests that a plaintiff may sometimes file suit against multiple defendants *60 in a venue which would be inappropriate in a suit against one defendant. See Leroy, 443 U.S. at 184, 99 S.Ct. at 2717 (footnote 17); and Brunette Machine Works v. Kockum Industries, 406 U.S. 706, 710, 92 S.Ct. 1936, 1939, 32 L.Ed.2d 428 (footnote 8) (1971). Prior to 1966, a plaintiff could bring a case within the federal courts' 28 U.S.C. § 1331 federal question jurisdiction only in the district where all defendants resided. If defendants resided in more than one district, a plaintiff could not bring a single suit in federal court against all of them. The addition in 1966 of the "claim arose" language eliminated this gap in the venue statutes by providing a venue in most cases in which defendants reside in different federal districts.
Plaintiff contends that the Court must keep this Congressional purpose in mind when construing § 1391(b). If the Court interprets the "claim arose" language strictly as defendant suggests it should, plaintiff cannot bring one suit against all three of the named defendants, since two "reside" in Missouri and one "resides" in California. It is arguably this type of "venue gap" the Supreme Court contemplated in Leroy when it limited the applicability of the general rule of narrow construction of the § 1391(b) "claim arose" language, noting
So long as the plain language of the statute does not open the severe type of "venue gap" that the amendment giving plaintiffs the right to proceed in the district where the claim arose was designed to close, there is no reason to read it more broadly on behalf of plaintiffs. See Brunette Machine Works v. Kockum Industries, 406 U.S. 706, 710, and n. 8 [92 S.Ct. 1936, 1939, and n. 8, 32 L.Ed.2d 428]. As Brunette indicates, the amendment of § 1391 to provide for venue where the claim arose was designed to close the "venue gaps" that existed under earlier versions of the statute in situations in which joint tortfeasors, or other multiple defendants who contributed to a single injurious act, could not be sued jointly because they resided in different districts. 406 U.S. at 710 n. 8 [92 S.Ct. at 1939 n. 8]. In this case, by contrast, Great Western has attempted to join in one suit three separate claims  each challenging a different statute  against three sets of defendants from three states. The statute simply does not contemplate such a choice on the part of plaintiffs.
443 U.S. at 184, 99 S.Ct. at 2716; see also Brunette Machine Works, 406 U.S. at 710, 92 S.Ct. at 1939 (footnote 8).
This language in Leroy is plaintiff's best argument for maintenance of venue in this judicial district under the "claim arose" language. While the First Circuit in Wool Masters gave little weight to a similar objection, 743 F.2d at 955; this Court cannot dismiss this argument so casually because dismissal or transfer of the plaintiff's complaint as to defendant Eclectic may result in a multiplicity of suits and judicial inefficiency. It might create the very type of venue gap Congress intended the addition of the "claim arose" language in § 1391(b) to remedy.
Critzas has named as defendants two residents of the Eastern District of Missouri who are without question not subject to suit in California. Plaintiff can properly join as defendants any parties against whom it has an action, and can properly bring an action to prohibit improper conduct, no matter how inconsequential it is in relative terms. If the analysis were to stop at this point, plaintiff could argue, based on the distinction drawn in the Leroy footnote, that the Court can fulfill the intent of Congress to eliminate venue gaps only by allowing venue in this district.
But, this argument proves too much. The situation here is distinguishable from the circumstances in which a broad construction of "claim arose" is necessary to allow a plaintiff to sue all joint tortfeasors in one district. Plaintiff does not even pretend to attempt to join all the alleged tortfeasors in this action. If plaintiff were really serious in its campaign to prevent all trademark infringement, including that at *61 the retail level, it would direct its actions against the retailers in California who sell forty times more "goop" products than is sold by the retailers who operate in Missouri. Without attributing ill motives to the plaintiff, the Court can say with some certainty that plaintiff joined the Missouri retailers as defendants simply to maintain venue in this district. To allow the plaintiff to pick its forum by naming as co-defendants with the target defendant local parties who can be sued nowhere else violates the spirit of Leroy.
Critzas has appended three Missouri common law counts to the three federal questions alleged in the complaint. It argues, in opposition to the transfer motion, that a federal district court in California is less able than this Court to apply the Missouri law relevant to these common law claims. Defendant Eclectic replies to this allegation by contending that the Lanham Act, 15 U.S.C. § 1114 et seq., has preempted the state common law in this area, citing Comidas Exquisitos v. Carlos McGee's Mexican Cafe, 602 F.Supp. 191 (S.D.Iowa 1985), aff'd on other grounds, 775 F.2d 260 (8th Cir.1985). Even if it were not the view of the Eighth Circuit that the Lanham Act preempts state common law trademark actions,[2] the presence of these state counts does not make a transfer inappropriate. A California federal district court can accurately apply Missouri law in the event it decides that as to certain acts and occurrences Missouri law controls. Further, again, the Court cannot allow the plaintiff to forum shop by appending particular state common law claims to his federal trademark claims. The plaintiff alleges that defendant Eclectic has violated its trademark rights across the country. It is curious that plaintiff has limited the state common law actions brought against Eclectic to those to which Missouri law applies.
While Critzas cites several district court cases that support its position, most do not give adequate deference to and often do not even cite the Supreme Court's decision in Leroy.[3] For example, neither Gold Eagle Co. v. Li, 486 F.Supp. 201 (N.D.Ill. 1980), nor Chicago Reader v. Metro College Publishing Co., 495 F.Supp. 441 (N.D. Ill.1980); even mention the Leroy opinion. In Noxell II, the decision of the District of Columbia Circuit that is one of the leading cases in this area, two of the three judges found the plaintiff's reliance on the line of authority cited by Critzas here so unconscionable in the wake of Leroy as to merit imposition of attorneys' fees. See 771 F.2d at 527. Even the dissenting judge found these decisions obsolete and inapposite. See Id. at 534-38.
Plaintiff also cites Look Magazine v. Look, 596 F.Supp. 774 (D.Del.1984). There, the Delaware federal district court reached the result Critzas argues for here after applying an appropriate Leroy analysis. It found the claim there arose in a district where the defendant had made only a portion of its sales. Id. at 776-78. However, the situation in Look is distinguishable from the present circumstances. The defendant was also incorporated and had its principal place of business in the same district. Id. In contrast, Eclectic is a California corporation and has its principal place of business in that state.
*62 Finally, Critzas argues that narrow construction of the "claim arose" language in § 1391(b) as sanctioned in Wool Masters and Noxell I would, in effect, innoculate a large national corporation from suit except in its home state. This argument identifies an unattractive side-effect of the narrow interpretation of the "claim arose" language. Several courts have cited this effect as the basis for refusing to extend the principles in Leroy to their logical conclusion in transitory actions. See Children's Television Workshop v. Mary Maxim, 223 U.S.P.Q. 965, 758 (S.D.N.Y.1984). However, this criticism misses the point. After Leroy, a court should focus on the nature of the underlying wrong alleged, regardless of the organizational structure of the business entity sued. That a company  large or small  is subject to suit in transitory federal question actions only in its home state is simply a ramification of the Supreme Court's interpretation of Congressional intent.

"Doing Business"
The Court must also determine whether Eclectic is "doing business" in the Eastern District of Missouri since a corporation is a resident of those judicial districts in which it does business. 28 U.S.C. § 1391(c). If Eclectic is a resident of the Eastern District of Missouri, then all the named defendants are residents here, and venue is proper.
Critzas contends the test for whether a corporation is "doing business" in a forum for venue purposes is the same as that commonly applied to determine whether a court has in personam jurisdiction over an out-of-state defendant. Plaintiff cites respectable and substantial authority in support of its position. See 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Jurisdiction § 3811 at 65-69; and 1 Moore's Federal Practice, ¶ .O.142(5.-1-3). If the Court were to apply this test of "doing business," Eclectic would probably be a Missouri resident, and venue would be proper in this district.
However, notwithstanding the weight of this authority, the view taken by the First Circuit in Wool Masters and the District of Columbia Circuit in Noxell I and Noxell II is preferable. In these cases, the Circuit Courts of Appeals refused to follow the rule urged by the commentators, finding the constitutional issues underlying the test for personal jurisdiction differ significantly from the consideration of convenience that are the basis for the venue statutes.
Although both the due process requirement of minimum contacts and the statutory venue provision are concerned, to some extent, with "fairness" to the defendant, the minimum contacts formula only measures the minimum amount of "fairness" required by the Constitution for a state to exercise extraterritorial jurisdiction. The fact that a particular court's assertion of personal jurisdiction is not so "unfair" as to deny a defendant due process does not necessarily mean that to hold trial there is "fair" in the sense contemplated by Congress in the venue statute. The two concepts are independent of each other and must be interpreted with their respective underlying objectives and rationales in mind.
Wool Masters, 743 F.2d at 952; see also Noxell I, 760 F.2d at 316. These cases establish that a corporation is "doing business" within a judicial district if a state could constitutionally require that corporation to obtain a license to do business. Id. Under this approach, a court should not look to the licensing statutes of any state in particular. Id. Instead, it should determine whether a state could require a business with those particular contacts to the forum to obtain a license without violating the Commerce Clause, U.S. Const. Art. 1, § 8, Cl. 3. Id. If so, the corporation is "doing business" for purposes of § 1391(c). Id.
The Eighth Circuit has not specifically chosen one of these competing approaches. An older case, Long v. Victor Products, 297 F.2d 577 (8th Cir.1961), appears to sanction application of the more liberal personal jurisdiction test. Id. at 580. But, in this decision, the Eighth Circuit did not *63 hold that the test for personal jurisdiction is the test a court should apply in venue determinations. Rather, the Court, as was commonly done at that time, fused the separate concepts of venue and personal jurisdiction.[4] In a later case, Jennings v. McCall Corp., 320 F.2d 64 (8th Cir.1963), an Eighth Circuit panel that contained two of the three judges who sat on the Long panel clearly gave the issues of venue and personal jurisdiction separate treatment. Id. at 66. Given that venue and personal jurisdiction are separate issues, the considerations outlined in thorough detail in Wool Masters, 743 F.2d at 945-55, militate for application of a more appropriate standard based on a Commerce Clause analysis.
Given Eclectic's limited contacts with Missouri, the state could not require the company to obtain a license to do business without violating the Commerce Clause. In Allenberg Cotton Co. v. Pittman, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), the Supreme Court found that a company's contacts with the State of Mississippi did not constitute "the sort of localization or intrastate character which [the Court has] required in situations where a state seeks to require a foreign corporation to qualify to do business." Id. at 33, 95 S.Ct. at 267 (parenthetical comment added).
The Mississippi Supreme Court, as noted, ruled that appellant was doing business in Mississippi. Appellant, however, has no office in Mississippi, nor does it own or operate a warehouse there. It has no employees soliciting business in Mississippi or otherwise operating there on a regular basis; its contracts are arranged through an independent broker, whose commission is paid either by appellant or by the farmer himself and who has no authority to enter into contracts on behalf of appellant.
Id. This is almost exactly the situation before the Court here. The facts in this case also resemble those in Wool Masters, where the First Circuit applied the Allenberg Cotton "localization" test in its determination that the defendant was not doing business for purposes of § 1391(b). 743 F.2d at 954-55.
In addition, as noted by the District of Columbia Circuit in Noxell II, use of the liberal interpretation of "doing business" would effectively undercut the import of the narrow definition of "claim arose" drawn by the Supreme Court in Leroy. 771 F.2d at 527.

Conclusion
Plaintiff cannot maintain suit against defendant Eclectic in the Eastern District of Missouri. The underlying cause of action alleged in this suit did not arise in this district, and all three defendants are not residents of this district.

ORDER
In accordance with the Memorandum filed this date,
IT IS HEREBY ORDERED that defendant Eclectic's motion to transfer be and is SUSTAINED.
IT IS FURTHER ORDERED that the plaintiff's cause against defendant Eclectic be and is TRANSFERRED pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the Central District of California.
NOTES
[1] In its original petition, plaintiff named as defendants Eclectic Products and Waterway-Creve Coeur. Plaintiff has subsequently filed a first-amended petition naming an additional defendant, Tim Hobbs. Under Fed.R.Civ.P. 15(a), plaintiff may amend its complaint as to defendant Eclectic without leave of Court because that defendant has not yet answered. See 6 C. Wright & A. Miller, Federal Practice and Procedure § 1483 pp. 411-12. The other defendant named in the original petition, Waterway-Creve Coeur, has not objected to the plaintiff's request for leave to amend. Accordingly, the Court will allow the plaintiff to amend its complaint to add Tim Hobbs as a defendant, and will consider defendant Eclectic's motion to dismiss or, in the alternative, to transfer as it applies to the first amended complaint.
[2] The Iowa federal district court based its finding of preemption on an old Eighth Circuit case, Sargent and Co. v. Welco Feed Mfg. Co., 195 F.2d 929 (8th Cir.1952). More recently, other Circuits have held that the Lanham Act preempts state common law only to the extent that state law allows behavior outlawed by the federal statute or provides a defense to it. See Purolater v. EFRA Distributors, 687 F.2d 554, 560 (1st Cir.1982); and Golden Door v. Odisho, 646 F.2d 347, 351-52 (9th Cir.1980). The Eighth Circuit has not yet contributed to this refinement in the preemption doctrine as it applies to trademark law.
[3] Children's Television Workshop v. Mary Maxim, 223 U.S.P.Q. 965, 967-68 (S.D.N.Y.1984); Parliament Import Co. v. Gibson Wine Co., 218 U.S.P.Q. 1012, 1013-14 (E.D.Pa.1982); Windsor Industries v. U.S. Diamond Imports, 549 F.Supp. 415, 417 (S.D.N.Y.1982); Gold Eagle Co. v. Li, 486 F.Supp. 201, 203-04 (N.D.Ill.1980); and Chicago Reader v. Metro College Publishing Co., 495 F.Supp. 441, 444 (N.D.Ill.1980).
[4] "The plaintiffs bottom their claim of jurisdiction here primarily on 28 U.S.C.A. § 1391(c). This is the venue statute which authorizes a suit against a corporation in the judicial district where it "is doing business." Consideration of the question whether this defendant was doing business in the Eastern District of Missouri so as to subject it there to service of process leads us at once, and as usual, to the general tests prescribed by the Supreme Court in International Shoe v. State of Washington." Id.