**DAKOTA INDUSTRIES, INC., Plaintiff,**

v.

**DAKOTA SPORTSWEAR, INC., Defendant.**

**No. CIV 90–4014.**

United States District Court, D. South Dakota, S.D.

Aug. 27, 1990.

---

William H. Heuermann, Donald N. Srstka, Sioux Falls, S.D., for plaintiff.

F. Joseph Dubray and Scott A. Hindman, Sioux City, Iowa, for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, District Judge.

Plaintiff is the holder of Federal Trademark Registration No. 941,497 for use of the trademark "DAKOTA" on snowmobile suits, jackets, coats, coveralls, ski pants and jackets, and jumpsuits and jackets, in U.S. Class 39. Plaintiff has brought this action alleging that the defendant's use of the trademark "DAKOTA SPORTSWEAR" infringes its trademark.

This Court has federal question jurisdiction under 15 U.S.C. §§ 1051–1127 and 28 U.S.C. § 1338.

Defendant has made a motion to dismiss under Rule 12(b) for lack of personal jurisdiction, or, in the alternative, to transfer the action to the Central District of California in Los Angeles where defendant has its principal place of business.

Defendant asserts that because it did not conduct any business in South Dakota, did not solicit business in South Dakota and did not ship any goods into South Dakota, it lacks sufficient minimum contacts with South Dakota to permit suit against it in South Dakota. *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

It appears from the record that defendant manufacturer has not made any direct sales of the allegedly infringing goods to South Dakota retailers, but it has sold to regional retailers with outlets in South Dakota, and some of the infringing goods have been shipped into and sold in South Dakota.

When an objection to venue is made, the burden is on the plaintiff to establish that venue is proper in the judicial district in which the action has been brought. 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3826 at 259 (1986); *Transamerica Corporation v. Trans-American Leasing Corp.*, 670 F.Supp. 1089 (D.Mass.1987).

Federal trademark law, as set out 15 U.S.C. §§ 1051 through 1127, does not contain any venue provisions. General venue provisions, as set out in 28 U.S.C. §§ 1391 through 1407, do not contain any venue provisions for trademark actions. 28 U.S.C. § 1400 covers the related field of patents and copyrights but there have been no cases suggesting that § 1400 should be applicable to trademark cases.

Because there are no special provisions relating to trademark cases, the general venue provisions of 28 U.S.C. § 1391 are applicable.

### 1. 28 U.S.C. § 1391(b)

Section 1391(b) provides:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Defendant is not incorporated in South Dakota, nor does defendant maintain its principle place of business in South Dakota. Venue under this section, therefore, is possible only if this trademark infringement

claim "arose" in South Dakota, or if defendant "resides" in South Dakota as defined by § 1391(c). These two bases will be analyzed individually.

■ A claim of violation of trademark laws does not arise in a state merely because the defendant sells goods in that state. *Johnson Creative Arts v. Wool Masters*, 743 F.2d 947 (1st Cir.1984). The complaint in *Wool Masters*, as in this case, seeks relief based on sales made throughout the country. The purpose of § 1391(b) is not to allow plaintiff to sue in each jurisdiction in which the allegedly infringing goods were sold. *Population Planning Associates v. Life Essentials*, 709 F.Supp. 342, 343 (S.D.N.Y.1989). Just as the *Wool Masters* decisions to infringe that plaintiff's trademark took place in New York, the decisions of defendant Dakota Sportswear took place in Los Angeles. *See Population Planning Associates, supra.*

The *Wool Masters* court held that Massachusetts sales of six to fourteen per cent of its sales was insufficient to give the Massachusetts court venue under the "claim arose" provision of § 1391(b) in a trademark action. Other courts considering this issue have agreed that venue in a trademark action is not proper in a district simply because some sales have been made there. Chief Judge Alsop in *Saturn Systems, Inc. v. Saturn Corp.*, 659 F.Supp. 865 (D.Minn.1987) held that occasional sales by the defendant in Minnesota were insufficient to create venue in Minnesota in a trademark case under § 1391(b). Judge Limbaugh in *Critzas Industries v. Waterway–Creve Coeur, Inc.*, 652 F.Supp. 56 (E.D.Mo.1986) held that Missouri sales of $9,600 out of total sales of $2,000,000 was insufficient to give Missouri courts venue under § 1391(b) in a trademark case.

The Supreme Court set the standard by which the issue of where the "claim arose" is to be decided in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In *Leroy*, the Supreme Court stated that

> ... it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts. Rather, it restricted venue either to the residence of the defendants or to 'a place which may be more convenient to the litigants'—i.e., both of them—'or to the witnesses who are to testify in the case.' In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Leroy* at 185, 99 S.Ct. at 2717. (citations omitted) (emphasis in original)

The clear weight of authority requires a holding that sales to regional retailers, who in turn sell infringing goods in South Dakota, are insufficient to give South Dakota courts proper venue under the "claim arose" provision of § 1391(b). Therefore, venue under § 1391(b) must turn on where the defendant "resides".

### 2. 28 U.S.C. § 1391(c)

■ Section 1391(c) reads, in pertinent part:

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced....

Prior to the amendment of this section, effective February 17, 1989, § 1391(c) created venue wherever a corporation was incorporated, licensed to do business, or was doing business. Cases prior to this modification were required to focus on the element of "doing business." Those cases no longer provide any guidance in determining venue under § 1391(c).

The Commentary on the 1988 Revision to this section indicates that the stated aim of

Congress was to restrict the plaintiff's venue choices, but it is obvious that the actual effect of the amendment was just the opposite. 28 U.S.C.A. § 1391 (West Supp.1990). The "doing business" standard clearly required a much higher level of business activity than the "minimum contacts" standards applicable to states' long-arm statutes. *Johnson Creative Arts v. Wool Masters, supra.* Under 28 U.S.C. 1391(c) as amended, in single district states, the only question necessary to determine residence, and therefore venue, is, does the court have personal jurisdiction over the defendant.

To determine whether the defendant is subject to personal jurisdiction in this district, it is necessary to consider South Dakota's long-arm statute.

South Dakota's long-arm statute, S.D. C.L. 15–7–2, establishes the basis for determining whether a defendant is subject to personal jurisdiction in this state. The defendant's acts, selling merchandise to regional retailers who bring defendant's merchandise into South Dakota, clearly do not constitute acts that would fall within subsections (1) through (13) of S.D.C.L. 15–7–2.

Plaintiff argues that jurisdiction in South Dakota can be predicated on subsection (14) which provides:

(14) The commission of any act, the basis of which is not inconsistent with the Constitution of this state or with the Constitution of the United States.

This subsection (14) was considered by this Court, and subsequently by the Circuit Court of Appeals for the Eighth Circuit, in *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987). In that case, the South Dakota plaintiff sued a New York law firm which had sent an associate and law clerk to South Dakota for three days to review documents, had made numerous phone calls between New York and South Dakota, had used courier services between the two states at plaintiff's expense, had mailed monthly billings to South Dakota, and had received checks drawn on South Dakota banks. After applying these facts to the five factor test set forth in *Land O–Nod Co. v. Bassett Furniture Indus-*

*tries, Inc.,* 708 F.2d 1338 (8th Cir.1983), it was held that these acts did not constitute sufficient minimum contacts to confer jurisdiction under S.D.C.L. 15–7–2(14). Dakota Sportswear has sent no representatives to South Dakota, has had no correspondence with customers in South Dakota, has solicited no business in South Dakota, and has neither made payments to nor received payments from anyone in South Dakota.

The short answer in this case is that Dakota Sportswear's contacts with South Dakota are less significant than the contacts of Pennie & Edmonds. Therefore, the defendant in this case has not had sufficient minimum contacts with South Dakota to create jurisdiction under subsection (14) of the South Dakota long-arm statute. Because defendant is not subject to personal jurisdiction in South Dakota, it does not "reside" in South Dakota for purposes of § 1391(c), and, therefore, this Court is not a proper venue under § 1391(b).

Plaintiff argues that when the defendant placed the goods carrying the infringing trademark into the stream of commerce, the fact that some of the goods were offered for sale in South Dakota constitutes sufficient minimum contacts with South Dakota to support jurisdiction, citing *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975) (*but see Acrison, Inc. v. Control and Metering, Ltd.,* 730 F.Supp. 1445 (N.D.Ill.1990)); and, *Horne v. Adolph Coors Co.,* 684 F.2d 255 (3rd Cir.1982) (*but see Curtis Mgt. Group v. Academy of Motion Picture Arts,* 717 F.Supp. 1362 (S.D.Ind.1989)).

These cases are patent cases, and tend to support the position that patent infringement actions can be brought in any state in which infringing goods are sold by the defendant either directly or indirectly by placing the goods of the stream of commerce. Plaintiff argues that this should be the law in trademark infringement actions.

There are no cases involving trademark infringement which adopt the view that *any* sale of goods bearing an infringing trademark, either directly or indirectly, constitutes sufficient minimum contacts

with a state to create venue under § 1391(c).

A plaintiff's damage to its trademark by sale of infringing goods occurs in some degree wherever the infringing goods are sold. However, where goods are distributed nationally, *Leroy* teaches us that the plaintiff does not have the option of venuing the case in any state it chooses.

While the sale of goods may in some instances reach a level that could be said to meet the minimum contacts test, that level clearly has not been reached in this case. In *Keeton v. Hustler Magazine, Inc.*, the Supreme Court noted that

> it is certainly relevant to the jurisdictional inquiry that petitioner is *seeking* to recover damages suffered in all States in this one suit. The contacts between [defendant] and the forum must be judged in the light of that claim, rather than a claim only for damages sustained in [South Dakota]. That is, the contacts between [defendant] and [South Dakota] must be such that it is 'fair' to compel [defendant] to defend a multistate lawsuit in [South Dakota] seeking nationwide damages....

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).[1]

In this case, defendant could not have reasonably foreseen being haled into court in South Dakota (*Keeton*, 465 U.S. at 781, 104 S.Ct. at 1481), and therefore venuing this case in South Dakota would violate traditional notions of fair play and substantial justice.

In conclusion, this case cannot be venued in South Dakota under 28 U.S.C. § 1391(b) because the claim did not arise in South Dakota, and because defendant does not reside in South Dakota as defined in § 1391(c). Defendant's motion to dismiss must be granted.

IT IS SO ORDERED.

---

1. For illustrative purposes, "[South Dakota]" has been inserted in place of "New Hampshire," and "[defendant]" has been inserted in place of "respondent."