**MAYBELLINE CO., Plaintiff,**

v.

**NOXELL CORPORATION, SSC & B:**
**Lintas Worldwide, Defendants.**

**No. LR–C–86–455.**

United States District Court,
E.D. Arkansas, W.D.

Aug. 25, 1986.

Hillary Rodham Clinton, Rose Law Firm, Little Rock, Ark. (Weil, Gotshal & Manges, New York City, of counsel), for plaintiff.

C. Richard Crockett, Eichenbaum Law Firm, Little Rock, Ark., Davis & Gilbert, New York City, for defendants.

## DECISION ON MOTION FOR PRELIMINARY INJUNCTION

ROY, District Judge.

Plaintiff has filed a complaint and motion for preliminary injunction alleging violations by the defendants under the provisions of the Lanham Act and unfair competition under common law. A hearing on the motion for preliminary injunction was held on August 20 and 21, after sufficient notice was given to all parties involved.

According to the allegations of the complaint, plaintiff, Maybelline Co., is a Delaware corporation whose principal place of business and only factory in the United States is located in North Little Rock, Arkansas.

Defendants, Noxell and SSC & B: Lintas Worldwide (SSC & B), are non-resident corporations doing business in Arkansas. Defendant Noxell manufactures Clean Lash mascara and defendant SSC & B is responsible for the advertising and promotion of Clean Lash mascara.

In seeking a preliminary injunction, the plaintiff requests the Court to restrain the defendants from continued advertisement of "Clean Lash" mascara as being waterproof; further shipment of packages of "Clean Lash" containing such misrepresentations; and the recall of such products now on display.

Section 43(a) of the Lanham Act provides, in pertinent part, that:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, ... any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action ... by any person who believes that he is or is likely to be

damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a)

To prevail on its claim under Section 43(a), Maybelline must establish, *inter alia*, that the claims it challenges are false or deceptive. *Toro Co. v. Textron, Inc.*, 499 F.Supp. 241, 251 (D.Del.1980). The Court finds after hearing the testimony and reviewing the exhibits that plaintiff has met its heavy burden of proof.

Defendants are engaged in a national television and printed media advertising campaign to promote Noxell's new line of mascara—Cover Girl Clean Lash. As part of this advertising campaign, defendants have aired numerous commercials on Arkansas television networks, caused full-page advertisements to be run in *People* and other national magazines. An exhibit received showed the advertisement in *People* magazine; and one of the witnesses testified an identical full-page advertisement also appeared on the back of the September issue of *Glamour* magazine. He stated that he had seen the ad in four or five other magazines, which had been distributed in Arkansas, as well as nationally. Sherry Colonel, advertising executive for SSC & B, testified that her company handled all the advertising for Clean Lash mascara.

In observing Plaintiff's Exhibit No. 4, a videotape of the Clean Lash commercial, it is noted that the voice-over claims that "water won't budge" Clean Lash and that it "laughs at tears." This appears to refer to product qualities—lack of flaking and no running/smearing/smudging. In addition, the Clean Lash advertisement depicts a woman putting on a dress over her head, implying that the mascara would not transfer to her dress or to her face, and dabbing around her eyes with a tissue, implying that tears would not cause the mascara to transfer to her face. However, independent laboratory tests indicated that all these things did occur to a number of subjects using Clean Lash mascara.

A similar commercial involving another waterproof mascara by Noxell (Marathon mascara) claims that Marathon is a "waterproof" mascara that will not smudge, smear or flake; it also shows a woman blotting her face with a towel after a swim, implying that the mascara will not transfer to her face or her towel after she blots it. The independent tests confirmed that Marathon was waterproof.

Webster's Dictionary defines "waterproof" as "impervious to water". From a common sense or consumer point of view, the promise of "waterproof" may be reasonably assumed to convey that the mascara will not run, smudge, smear or flake while it is being worn during water activities. It is also reasonable to assume that it will not diminish or transfer when the face is touched with a tissue or towel before removal.

Even defendants' witnesses admitted that when a woman cries or swims, a waterproof mascara should stay on. The packaging of the product represents that Clean Lash is "waterproof!"; "resists water and tears", and that it "lasts hour after hour".

Although the testimony is conflicting as to whether there is an industry-wide standard as to the definition of waterproof, Gary Mulloy, Sr. Vice President, Marketing & Advertising for Maybelline, testified that the term waterproof is a direct and positive claim which must be "totally validated". He stated this was not only Maybelline's position but also the industry's position.

Certain tests were conducted by Hilltop Research, Inc., an independent research corporation. Hilltop was employed by the plaintiff to conduct a test to determine whether Clean Lash was, in fact, a waterproof product. The tests involved a number of subjects, and as to both the swim and shower tests, after applying the mascara, the subjects waited fifteen minutes and then the cosmetologist examined the eyelashes to ensure that the mascara was dry.

As to the shower test, the subject was then instructed to take a five-minute shower. She was told to adjust the water to the

temperature comfortable to her, and to place her face in the stream of water for ten seconds.

Following the shower, the individual being tested was instructed not to dry her head or face. Within five minutes after she exited the shower, she was brought to the cosmetologist who evaluated the condition of the mascara. The swim test was held in the same fashion. In addition, the subject's eyes were blotted with tissue and then observed. For a significant proportion of subjects who were tested with Clean Lash mascara, the product was affected by water and did not remain in place either when worn during swimming or when exposed to a shower.

There was much conflicting testimony regarding the amount of drying time necessary to properly test a mascara in order to ascertain if it was waterproof. The Court attached significant weight to the credibility of plaintiff's cosmetologist who stated that she checked the subjects carefully for dryness. Even though defendants contended this was insufficient, the credentials of the cosmetologist were unchallenged, and she testified that she would send the subjects back if the mascara was not dry. Her positive testimony was that Clean Lash was not waterproof.

It is also noted that nothing was placed on the package stating that a certain amount of drying time was necessary for effectiveness as a waterproof mascara. Furthermore, Tom Yeager, Sr. Vice President for Research and Development of Maybelline, testified that in one of the tests, some subjects waited one hour for the mascara to dry before testing, and the mascara was still significantly affected by water. Even some of defendants' own test results showed considerable flaking and transference of Clean Lash. Nowhere in the television commercials or printed ads are any conditions placed on the product's waterproofness, whether it be drying time, the humidity content of the environment when applying the mascara, or the chemical content of the water.

Lillian Dunn, who was employed by Revlon in the research and development department for over 30 years, testified by way of closed circuit television on the first day of the hearing. Although this procedure was new to this Court, the reception was very good, Ms. Dunn's voice was strong, and a full body view was telecast. The only apparent problem was the failure of the witness to have one or two of the exhibits the defendants wished to use in cross-examination. Any possible prejudice that may have occurred from this source was remedied when plaintiff had her present in court the second day of the hearing and stated for the record that she was available for cross-examination if the defendants so desired. The defendants chose not to call her. It was her expert opinion based on many years experience and testing of the product that Clean Lash was not waterproof.

Defendants questioned the integrity of Hilltop Research tests because of previous tests which defendants contended were not acceptable to them. However, on cross-examination, Dr. Edward Jackson, Manager of Toxicology and Research Services of Noxell, admitted he was engaged in correspondence in which he was negotiating with Hilltop for the conducting of further research for Noxell.

The Court has also considered the exhibits presented by defendants which reflect modifications of the television commercials which two of the three television networks required after Maybelline advised the networks they challenged Noxell's claims about Clean Lash. Said revised commercials began airing August 15, 1986. The Court is of the opinion that the modified television commercials continue to indicate that Clean Lash is "waterproof", and are therefore deceptive.

In *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981) the Court set out the factors to be considered in ruling on a motion for preliminary injunction:

(1) the threat of irreparable harm to the movant;

(2) the state of balance between that harm and the injury that granting the injunction will inflict on other parties litigant;

(3) the probability that movant will succeed on the merits; and

(4) the public interest.

Gary Mulloy, Sr. Vice President Marketing and Advertising for Maybelline, testified and the Court finds his testimony credible, that defendants' misrepresentations have caused and will continue to cause a severe adverse impact on plaintiff's business. He stated that in October or November of 1985, he became aware of Clean Lash, and representatives of Maybelline began to complain to Noxell about the deceptive advertising, after making some informal tests which showed that Clean Lash was not waterproof. He testified Maybelline had lost a considerable share of the market. In 1985, plaintiff had 35% of the mascara market; in January-February of 1986, it had less than 35%; in March-April, 1986—33.8%; and May-June-32.2%. Although candidly admitting other factors are involved in determining each seller's market share, he stated the sales of Clean Lash through the deceptive advertising had the most material impact. He testified that mascara sales were the base of Maybelline's business and that the continued misrepresentations would affect the plaintiff's sale of other products, since many women use plaintiff's entire line because they are using plaintiff's mascara.

The Court finds that the public should be protected from false advertising and deceptive packaging and should be able to rely upon the representations made to them by the manufacturer when they buy a product.

In balancing the harm between plaintiff and defendants since continuation of deceptive advertising is unfair to the public, the Court must remember that any possible harm to the defendants is self-imposed. Moreover, the defendant Noxell's financial statement for 1985 shows overall net sales of $382,125,000.00, and mascara is only one of many products which Noxell markets.

From the testimony and exhibits presented at the hearing, the Court is of the opinion that it is probable that plaintiff will succeed on the merits.

In accordance with these findings, the Court hereby grants the plaintiff a preliminary injunction and defines the relief as follows:

1. Defendants Noxell and SSC & B are to discontinue the present deceptive television and printed advertising;

2. Defendant Noxell is to discontinue shipment of Clean Lash under the present deceptive packaging;

3. Although plaintiff has requested a recall, it is fundamental that an injunction should not be so broad as to operate oppressively or contrary to real justice.

*Emra Corp. v. Superclips Ltd.*, 559 F.Supp. 705 (E.D.Mich.1983). Since this is not a determination on the merits, the Court is of the opinion that a recall might be unduly onerous, especially since Noxell's products are widely distributed and no doubt expensive to ship. However, because the Court considers the violations to be serious, defendant Noxell is directed to send a letter to all to whom Clean Lash has been distributed directing them to withhold further sales of Clean Lash mascara at this time. It will be up to the defendant Noxell to determine an effective and appropriate manner in which said sales are to be withheld. Thereafter, as soon as practicable, the defendant by written letter should advise the Court and opposing counsel the steps which have been effectuated to carry out this decision.

### ORDER

In accordance with the findings entered this same date, the Court hereby finds that plaintiff is entitled to preliminary injunctive relief. The relief ordered is as follows:

1. Defendants Noxell and SSC & B are to discontinue the present deceptive television and printed advertising;

2. Defendant Noxell is to discontinue shipment of Clean Lash under the present deceptive packaging;

3. Defendant Noxell is directed to send a letter to all to whom Clean Lash has been distributed directing them to withhold further sales of Clean Lash mascara at this time. Defendant Noxell is to determine an effective and appropriate manner in which said sales are to be withheld. Thereafter as soon as practicable, the defendant by written letter should advise the Court and opposing counsel the steps which have been effectuated to carry out the terms of this provision of the Order.

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the plaintiff must post security before this injunction shall be effective. Therefore, the Court hereby orders that upon the posting of a security bond in the amount of $250,000.00 by plaintiff Maybelline this injunction shall issue and the defendant should begin compliance with the order immediately.