MAYBELLINE CO., Appellee,

v.

NOXELL CORPORATION; SSC & B: Lintas Worldwide, Appellants.

No. 86–2087.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1986.
Decided March 10, 1987.

Robert B. Hoemeke, St. Louis, Mo., for appellants.

Helene Jaffe, New York City, for appellee.

Before ROSS, WOLLMAN, and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

Maybelline Co. brought this action against Noxell Corporation and SSC & B: Lintas Worldwide seeking to enjoin alleged false representations in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), concerning Noxell's product "Cover Girl Clean Lash Mascara." Noxell markets Clean Lash as a waterproof mascara. Maybelline's complaint alleged that Clean Lash was not a waterproof mascara and that the Clean Lash advertising campaign and product packaging, both of which promoted Clean Lash as a waterproof mascara, were false and deceptive. Noxell and SSC & B's attempt to have the action dismissed or transferred for improper venue was refused by the district court, which, after a preliminary injunction hearing, agreed with Maybelline. Noxell and SSC & B, the advertising agency for Noxell's Clean Lash campaign, appeal the district court's order granting a preliminary injunction enjoining the dissemination of Clean Lash advertising and the shipment of Clean Lash, and requiring Noxell to send a letter to its customers directing them to withhold sales of Clean Lash. *Maybelline Co. v. Noxell Corp.*, 643 F.Supp. 294 (E.D. Ark.1986). The district court denied a motion for a stay of its order pending this appeal. On September 5, 1986, we granted a similar motion. Because we find that the district court erred in failing to grant No-

xell and SSC & B's motion to dismiss or transfer for improper venue, we reverse the decision of the district court without reaching the merits of the determination whether Clean Lash is a waterproof mascara.[1]

Venue in this action is governed by 28 U.S.C. § 1391 (1982). Section 1391(b)[2] provides that venue is proper in the judicial district where all defendants reside or in which the claim arose. Section 1391(c)[3] establishes that the residence of a corporation for venue purposes includes the judicial district where it is "doing business."[4] Thus, venue is proper in the Eastern District of Arkansas if Noxell and SSC & B are doing business there or if Maybelline's claim arose there.

### I

In *Bredberg v. Long*, 778 F.2d 1285, 1289 (8th Cir.1985), this court stated that "[t]here is no general agreement as to whether it is sufficient under § 1391(c) to meet due-process jurisdictional standards for 'doing business,' or whether a higher level of activity within the district must be demonstrated." Because the activity in that case did not meet even the lower due process jurisdictional standard, the court was not compelled to select between the two viewpoints. We are now confronted with a case in which sufficient activity exists to justify the assertion of jurisdiction, and thus venue, under due process standards. Therefore, we must decide between the two views noted in *Bredberg* and determine whether due process standards are appropriate in the venue context or whether a higher level of activity than that necessary for jurisdiction should be required for venue.

The district court found, and Maybelline argues, that venue is proper if a corporation is doing sufficient business in a district to satisfy the constitutional test for service of process. Under this rationale, when a defendant has the contacts with the district required by the due process clause of the fourteenth amendment for a state to assert personal jurisdiction over the defendant, *see International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), venue is proper as well. This view has been adopted by at least one court of appeals,[5] *see Houston Fearless Corp. v. Teter*, 318 F.2d 822, 825 (10th Cir.1963), a smattering of district courts, *see, e.g., Transload & Transport, Inc. v. Tennessee Valley Towing, Inc.*, 609 F.Supp. 185, 186 (M.D.La.1985); *Cable News Network, Inc. v. American Broadcasting Cos.*, 528 F.Supp. 365, 367 (N.D.Ga.1981); *Galonis v. National Broadcasting Co.*, 498 F.Supp. 789, 791 (D.N.H.1980), and several well-respected commentators. *See* 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, *Moore's Federal Practice* ¶ 0.142[5.–1–3], at 1409–13 (2d ed. 1986) [hereinafter *Moore's*]; 15 C. Wright, A. Miller & E.

---

**1.** We note that "[a]n appeal from an order granting or refusing injunctive relief pursuant to 28 U.S.C. § 1292(a)(1) presents for appellate review 'the entire order, not merely the propriety of injunctive relief.'" *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69, 73–74 (8th Cir.) (quoting C. Wright, Handbook on the Law of Federal Courts § 102, at 459 (2d ed. 1970)), *cert. denied*, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *see Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1140–41 (8th Cir.1976). Therefore, the district court's denial of the motion to dismiss for improper venue is properly before us.

**2.** 28 U.S.C. § 1391(b) (1982) provides:
(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

**3.** 28 U.S.C. § 1391(c) (1982) provides:

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

**4.** It is irrelevant for present purposes that section 1391(c) also provides that the residence of a corporation includes the district in which it is incorporated or licensed to do business. Neither Noxell nor SSC & B are incorporated or licensed to do business in Arkansas.

**5.** The courts in *Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230, 1233 (4th Cir.1976), and *Frazier v. Alabama Motor Club, Inc.*, 349 F.2d 456, 459 (5th Cir.1965), might be said to have adopted this view also, although less clearly so and with less discussion.

Cooper, *Federal Practice and Procedure* § 3811, at 123 (2d ed. 1986) [hereinafter Wright, Miller & Cooper]. These authorities have adopted the same test for both jurisdiction and venue apparently for the sake of uniformity and simplicity. *See Galonis*, 498 F.Supp. at 791 ("uniformity in applying § 1391(c) is desirable"); 1 *Moore's* ¶ 0.142[5.–1–3], at 1411 (same); 15 Wright, Miller & Cooper § 3811, at 123 (using same test for both jurisdiction and venue is "simplest test"). One commentator, although recognizing that "[t]he considerations relevant to personal jurisdiction and to venue are not entirely congruent," stated that "there is a great advantage in having one standard of 'doing business' for both doctrines rather than complicating an already-complicated matter by having two different standards." 15 Wright, Miller & Cooper § 3811, at 120–21.

Noxell and SSC & B argue, however, that a higher standard for "doing business" is necessary in the venue context. They contend that venue is proper only if a corporation is doing enough business in a district to satisfy the constitutional test for when a state can require a corporation to qualify to do business in the state. Thus, when a defendant's business in a district is sufficiently intrastate and localized that the state, consistent with the commerce clause, could require it to qualify to do business there, *see Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 33, 95 S.Ct. 260, 267, 42 L.Ed.2d 195 (1974), venue is proper. This view also has been adopted by respectable authorities, including two courts of appeals, *see Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 721 (D.C.Cir.1986) (citing *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312, 316 n. 7 (D.C. Cir.1985)), *cert. denied*, —— U.S. ——, 107 S.Ct. 940, 93 L.Ed.2d 991 (1987); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947 (1st Cir.1984), and, with some differences,[6] a number of district courts.

See, e.g., *Lubrizol Corp. v. Neville Chem. Co.*, 463 F.Supp. 33, 36–37 (N.D.Ohio 1978); *Damon Coats, Inc. v. Munsingwear, Inc.*, 431 F.Supp. 1303, 1309 (E.D.Pa.1977); *P.C. Prods. Corp. v. Williams*, 418 F.Supp. 331, 332 (M.D.Pa.1976), *appeal dismissed*, 556 F.2d 568 (3d Cir.1977). These authorities have required a higher level of activity for venue than for jurisdiction because "the considerations underlying personal jurisdiction are not the same as those underlying venue." *Wool Masters*, 743 F.2d at 949. In *Wool Masters*, the leading case adopting this view, the court stated:

> The minimum contacts test for personal jurisdiction is based on the *minimum* amount of "fairness" required in order to comport with due process. Venue limitations generally are added by Congress to insure a defendant a fair location for trial and to protect him from inconvenient litigation.

*Id.* (emphasis in original).

■ We agree with *Wool Masters* and the other authorities holding that the standards for personal jurisdiction and venue should not be the same because the two doctrines rest on differing considerations. Principles of uniformity and simplicity are important, but we would be remiss to invoke them in a manner that disrespects the considerations underlying venue. The personal jurisdiction standard is concerned with where a case *may* be heard consistent with due process; venue is a statutory requirement that reflects "Congress' decision concerning where a case *should* be heard." *Wool Masters*, 743 F.2d at 951 (emphasis in original). Although both doctrines embody fairness considerations, the personal jurisdiction standard also includes an element of "interstate federalism" that may override fairness. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292–94, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980); *see Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 702 n.

---

**6.** The district courts have not adopted the commerce clause standard but have found venue proper if a corporation's "activities within the district are such that its business has become localized and is an operation within the district so that some state would probably require the foreign corporation to be licensed as a condition precedent to doing that business." *Remington Rand, Inc. v. Knapp-Monarch Co.*, 139 F.Supp. 613, 620–21 (E.D.Pa.1956) (footnote omitted).

10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982); *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958). Venue, on the other hand, is more clearly directed at fairness and convenience to the defendant. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979). The authorities adopting the personal jurisdiction standard take the position that if a corporation's activities in a district make it fair to subject the corporation to service of process of the state in which the district is located, it is not unfair to require the corporation to defend a suit there. *See, e.g.*, 1 *Moore's* ¶ 0.142[5.–1–3], at 1413. We, however, are of the view that "[t]he fact that a particular court's assertion of personal jurisdiction is not so 'unfair' as to deny a defendant due process does not necessarily mean that to hold trial there is 'fair' in the sense contemplated by Congress in the venue statute." *Wool Masters*, 743 F.2d at 952. Therefore, we conclude that "doing business" for venue purposes should be subject to a higher standard than that for personal jurisdiction.

■ We also agree with *Wool Masters* that, given the circumstances surrounding Congress' 1948 adoption of revisions to the Judicial Code, the commerce clause standard is an appropriate measure for "doing business" under section 1391(c). In the days before the corporate venue statute, the Supreme Court held that corporations could be sued in the state in which they were incorporated, because it was their "residence," *Seaboard Rice Milling Co. v. Chicago, Rock Island & Pac. Ry.*, 270 U.S. 363, 366, 46 S.Ct. 247, 70 L.Ed. 633 (1926), or in states in which they had designated an agent for service of process in voluntary compliance with state foreign corporation laws, because they had "waived" their venue privileges. *Suttle v. Reich Bros. Constr. Co.*, 333 U.S. 163, 164, 68 S.Ct. 587, 588, 92 L.Ed. 614 (1948); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939). The latter provision, the "*Neirbo* rule," led to the anomaly that venue was proper as against corporations that conformed with state law and appointed agents for service of process, but improper as against corporations that had not designated an agent even though state law required them to do so. In 1948 Congress wrote the *Neirbo* rule into the venue statute but made it clear that the place of "doing business" was to be considered the residence of the corporation for venue purposes, regardless of whether the corporation had complied with state law and appointed an agent for service of process. We believe that this alteration of the venue statute was meant to rectify the anomalies of the *Neirbo* rule by removing the advantage a corporation could gain by failing to comply with state registration law. *See Wool Masters*, 743 F.2d at 953; *Farmers Elevator Mutual Ins. Co. v. Carl J. Austad & Sons, Inc.*, 343 F.2d 7, 11 (8th Cir.1965). Moreover, we are unwilling to conclude that by seeking to remove the advantage a corporation could gain by failing to comply with state registration law Congress intended to extend venue to the full limits of the due process clause. Consequently, we hold that "doing business" in a district for purposes of section 1391(c) means "engaging in transactions there to such an extent and of such a nature that the state in which the district is located could require the foreign corporation to qualify to 'do business' there."[7] *Wool Masters*, 743 F.2d at 954 (emphasis omitted).

---

7. Although we recognize, as did the *Wool Masters* court, 743 F.2d at 954 n. 11, that the commerce clause standard contains no inherent element of "fairness," we believe that it is an appropriate standard both because it is consistent with what Congress meant by "doing business" and because its use in the venue context is consistent with fairness and convenience considerations. We have adopted the *Wool Masters* court's observations relating to Congress' intentions concerning section 1391(c). We wish to add, however, that the fact that the commerce clause standard "has literally nothing to do with place of suit or protection against an inconvenient forum," 15 Wright, Miller & Cooper § 3811, at 121, does not mean that it cannot be employed in a manner that furthers fairness and convenience considerations. We believe that fairness and convenience to the defendant are protected by requiring the level of activity necessary under the commerce clause standard.

The district court applied the personal jurisdiction standard to its factual findings and determined that Noxell and SSC & B were "doing business" in the Eastern District of Arkansas. Because we have concluded that the commerce clause standard is the appropriate standard for "doing business," we must reexamine the district court's determination using the standard that we have adopted. The facts pertinent to venue were stated in the district court's order denying Noxell and SSC & B's motion to dismiss or transfer for improper venue. *Maybelline Co. v. Noxell Corp.*, 643 F.Supp. 294 (E.D.Ark.1986) (order denying motion to dismiss or transfer for improper venue). Noxell is a Maryland corporation with its principal place of business in Maryland. Noxell's sales to Arkansas retailers constitute approximately two percent of the company's total sales, or approximately $7.64 million out of $382.13 million. Noxell has one employee in Arkansas who, working out of his home, solicits orders, which are then filled by direct shipment from Noxell's home office. Noxell has no office or property in Arkansas. SSC & B is a Delaware corporation with its principal place of business in New York. SSC & B prepares advertising and promotional materials for Noxell that are distributed in Arkansas. SSC & B has no office, property, or employees in Arkansas. We do not believe that the activities of either of the defendants amount to "doing business" in the Eastern District of Arkansas. The business activities of Noxell and SSC & B do not reach the level of intrastate activity or localization that would permit the state of Arkansas to require the corporations to qualify to do business there. Consequently, venue is not proper as against Noxell and SSC & B in the Eastern District of Arkansas under the "doing business" provision of section 1391(c).

## II

The district court also found that venue was proper under the "where the claim arose" provision of section 1391(b). The standard for determining where a claim arose under section 1391(b) was stated in *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–85, 99 S.Ct. 2710, 2716–17, 61 L.Ed2d 464 (1979).[8] The *Leroy* Court noted that the purpose of venue is in most instances "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial," *Leroy*, 443 U.S. at 183–84, 99 S.Ct. at 2716 (emphasis in original), and held:

> [T]he broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence,

8. In several pre-*Leroy* cases interpreting the "where the claim arose" language of 28 U.S.C. § 1391(a) (1982), this court found that venue was proper where a "substantial part of the [events or] omissions giving rise to the claim occurred." *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir.1973); *see Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 261 (8th Cir.), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Hawkins*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). The "substantial part" test was also applied in one post-*Leroy* section 1391(a) case, in which the court noted in a footnote citation that *Leroy* was supportive of a position analogous to the contrary of the court's position. *In re Nine Mile Ltd.*, 692 F.2d 56, 60 & n. 6 (8th Cir.1982) (per curiam). Maybelline argues that the substantial part test is applicable here and has not been altered by *Leroy*. The district court found that venue was proper under either standard. We conclude that we must follow the Supreme Court's interpretation of section 1391(b) in *Leroy* in our review of this section 1391(b) issue, and thus *Leroy* represents the correct standard for determining whether Maybelline's claim arose in the Eastern District of Arkansas. *See Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312, 316 (D.C.Cir.1985); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 955 (1st Cir.1984); *Myers v. American Dental Ass'n*, 695 F.2d 716, 723 (3d Cir. 1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983); *see also* 15 Wright, Miller & Cooper § 3806, at 47, 54 n. 46 (Eighth Circuit relied on reasoning rejected in *Leroy*). This court's application of *Leroy* in *Bredberg v. Long*, 778 F.2d 1285, 1289 (8th Cir.1985), supports our conclusion.

and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id.* at 185, 99 S.Ct. at 2717 (emphasis in original) (footnote omitted). Maybelline's claim, based as it is on advertising messages disseminated throughout the entire nation, does not arise in any one specific district, but we are not persuaded that Arkansas can plausibly be grouped with those few districts that constitute the locus of the claim. The district court's recitation of Maybelline's activities in Arkansas indicates that the court departed from the *Leroy* Court's emphasis on the convenience of defendants, as contrasted with the convenience of plaintiffs. The district court's order finding venue proper as against Noxell and SSC & B placed undue emphasis on Maybelline's activities in Arkansas, including the number of employees the company has there and the size of its payroll, in connection with the court's venue analysis. Furthermore, all of Noxell and SSC & B's witnesses with respect to the preliminary injunction hearing were from Maryland, New Jersey, New York, and Pennsylvania. Although the district court accepted Maybelline's assertions that "all of plaintiff's witnesses do not reside in other districts," no Arkansas witness testified at the preliminary injunction hearing and the record reveals a strong likelihood that the bulk of Maybelline's witnesses at trial would not be Arkansans. The record indicates that a Maybelline vice president for manufacturing lives in Arkansas, but names no other Arkansans that might conceivably be called as witnesses at the trial. None of the product testing of Clean Lash, either by Maybelline or Noxell, appears to have been done in Arkansas or by Arkansans. We therefore conclude that venue is not proper as against Noxell and SSC & B in the Eastern District of Arkansas under the "where the claim arose" provision of section 1391(b).

In conclusion, Noxell and SSC & B are not "doing business" in the Eastern District of Arkansas, nor did Maybelline's claim arise there. Thus, we hold that the district court erred in failing to grant Noxell and SSC & B's motion to dismiss or transfer for improper venue. Accordingly, the district court's grant of a preliminary injunction is reversed and the case is remanded to the district court with directions to dismiss or to transfer the action.