**FORD MOTOR COMPANY, Plaintiff,**

v.

**CHROMA GRAPHICS, INC., Defendant.**

Civ. A. No. 86–CV–74607–DT.

United States District Court,
E.D. Michigan, S.D.

Nov. 10, 1987.

David C. Hilliard, Chicago, Ill., Gregory L. Curtner, Detroit, Mich., for plaintiff.

Ernest I. Gifford, Birmingham, Mich., Andrew S. Neely, Knoxville, Tenn., for defendant.

## OPINION GRANTING DEFENDANT'S MOTION TO TRANSFER

DUGGAN, District Judge.

This matter is before the Court on Motion of defendant Chroma Graphics, Inc., to transfer this case to the Eastern District of Tennessee, for the reason that venue is improper in the Eastern District of Michi-

gan. Alternatively, defendant seeks transfer of this case to the Eastern District of Tennessee for reasons of convenience.

Plaintiff Ford Motor Co. brought this action against defendant Chroma Graphics, a Tennessee corporation, for trademark infringement.

Pursuant to 28 U.S.C. § 1406(a), a court must either dismiss a case laying venue in the wrong district or transfer it to any district in which it could have been brought, if it is in the interest of justice to do so. Because this case is not founded solely on diversity, venue is proper in the district where all defendants reside, or in which the claim arose. 28 U.S.C. § 1391(b).

The residence of a corporation for venue purposes is set forth in 28 U.S.C. § 1391(c):

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Venue is proper in the instant case in Michigan only if defendant Chroma Graphics is doing business in Michigan or if the claim arose in Michigan.

*"Doing Business"*

■ There is split authority as to whether "doing business" for purposes of § 1391(c) should be construed as business activities sufficient to meet the "minimum contacts" tests for personal jurisdiction, *see Houston Fearless Corp. v. Teter,* 318 F.2d 822, 825 (10th Cir.1963), or business activities that exhibit the sort of localized or intrastate character such that the state is permitted under the Commerce Clause to require the corporation to qualify to do business there. *Maybelline Co. v. Noxell Corp.,* 813 F.2d 901, 905 (8th Cir.1987); *Eli Lilly and Co. v. Home Ins. Co.,* 794 F.2d 710, 721–722 (D.C.Cir.1986); *Johnson Creative Arts v. Wool Masters,* 743 F.2d 947, 954 (1st Cir.1984).[1] The proponents of the higher "commerce clause" standard

1. The Sixth Circuit has yet to decide this issue.

reason that "the considerations underlying personal jurisdiction are not the same as those underlying venue." (*Wool Masters* at 949):

> The minimum contacts test for personal jurisdiction is based on the *minimum* amount of "fairness" required in order to comport with due process. Venue limitations are added by Congress to insure a defendant a fair location for trial and to protect him from inconvenient litigation.

*Wool Masters, id.* Indeed, the Supreme Court in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979), recognized the intent of Congress in enacting venue statutes, to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient forum:

> In most instances, the purposes of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial. For that reason, Congress has generally not made the residence of the plaintiff a basis for venue in nondiversity cases. But cf. 28 U.S.C. § 1391(e). The desirability of consolidating similar claims in a single proceeding may lead defendants, such perhaps as the New York and Maryland officials in this case, to waive valid objections to otherwise improper venue. But that concern does not justify reading the statute to give the plaintiff the right to select the place of trial that best suits his convenience. So long as the plain language of the statute does not open the severe type of "venue gap" that the amendment giving plaintiffs the right to proceed in the district where the claim arose was designed to close, there is no reason to read it more broadly. on behalf of plaintiffs.

*Leroy*, 99 S.Ct. at 2716–2717.

This Court is persuaded that the test for "doing business" under § 1391(c) should not be the same as the "minimum contacts" test for personal jurisdiction. Convenience to the defendant is the underlying basis for all venue statutes. On the other hand, convenience is not a significant factor in determining whether or not a state has personal jurisdiction over a defendant.

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another state ... [and] even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment. *Wool Masters, supra* at 951 *citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980).

The venue statute requires that a defendant "reside" in the district in order for venue to be proper. Residence of a corporate defendant is defined as any judicial district in which "it is incorporated or licensed to do business or is doing business". 28 U.S.C. 1391(c). Such definition suggests a greater "localization" or "presence" of a corporation in a district than is required by the "minimum contacts" test for acquiring personal jurisdiction over a non-resident.

This Court agrees with the reasoning and conclusion of the *Wool Masters* court that the venue test to be applied is whether the defendant is "doing business" in Michigan using the 'commerce clause' standard. Under this standard, a defendant is "doing business" in the state if it is "engaging in transactions there to such an extent and of such a nature that the state in which the district is located *could* require the foreign corporation to qualify to 'do business' there." *Wool Masters* at 954. The Commerce Clause prohibits a state from requiring a corporation to qualify to do business in that state, absent some kind of intrastate activity or localization of the business in that state. *Id.* at 954. In *Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), the Supreme Court found that where a Tennessee cotton broker had no office in Mississippi, did not own or operate a warehouse

in Mississippi, had no employees soliciting business in Mississippi or otherwise operating there on a regular basis, and arranged contracts to sell Mississippi cotton through an independent broker whose commission was paid by the cotton broker, despite the fact that the cotton was delivered to a Mississippi warehouse for sorting and classification prior to its shipment in interstate commerce, the defendant's activities in Mississippi did not exhibit the sort of localization or intrastate character which is required in order for a state to require a foreign corporation to qualify to do business.

Similarly, the Court in *Wool Masters* rejected the plaintiff's contention that the defendant was "doing business" in Massachusetts for venue purposes under the commerce clause standard. The defendant in *Wool Masters*, a New York corporation, solicited orders from Massachusetts by mail, received orders from Massachusetts by phone and by mail, regularly shipped goods to Massachusetts retailers for resale there to consumers, and received payment for the shipped goods. Notwithstanding such activities, the court found that defendant was not "doing business" in Massachusetts.

More recently in *Maybelline, supra,* the Eighth Circuit found that venue was not proper in an Arkansas court where the defendant cosmetic company had its principal place of business in Maryland, retail sales in Arkansas constituted approximately 2% of the company's total sales, and the company had one employee in Arkansas who worked out of his home soliciting orders which were shipped directly to Arkansas from the company's home office.

■ In the present case, defendant Chroma Graphics contends that it has no employees or property or place of business in Michigan. Defendant's sales in Michigan are made by independent representatives to independent distributors. Consistent with the authorities cited above, this Court concludes that defendant's transactions in Michigan are not sufficiently localized and do not constitute intrastate activity so as to permit the state to require defendant to qualify to do business there. As such, defendant is not "doing business" in Michigan for venue purposes under § 1391(c).

*"Claim Arose"*

■ Determining where the "claim arose" for purposes of venue in a trademark infringement action is often difficult where the allegedly infringing products have been sold in a number of states. Such "transitory" actions in which it is not clear that the claim arose in only one district, requires application of the "claim arose" test set forth in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979):

> "In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim. [Citation omitted]".

The *Leroy* court reasoned as follows:

> "... it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party unfettered choice among a host of different districts. [Citation omitted]. Rather, it restricted venue either to the residence of the defendants or to "a place which may be more convenient to the litigants"—i.e., both of them—"or to the witnesses who are to testify in the case."

The District of Columbia Circuit in *Noxell v. Firehouse No. 1 Bar–B–Que Restaurant*, 760 F.2d 312 (D.C.Cir.1985) applied the Leroy test in a trademark infringement action in which a Maryland cor-

poration filed suit in the District of Columbia against a California restaurant and its owner. The court found that where defendant's employees and witnesses were located in California and 40% of defendant's sales were made in California as opposed to the 1.5% made in the District of Columbia, that a California forum would permit greater access to relevant evidence. Nor was the District of Columbia more convenient for the defendant in light of the fact that defendant restaurant owner was a full-time San Francisco firefighter, all of defendant's employees and corporate records were located in California, and of the 14,000 cases of defendant's barbeque sauce sold in the U.S., only 200 ended up in the District of Columbia. The *Noxell* court concluded not only that plaintiff's choice of forums would create a hardship for the defendants, but also that the District of Columbia is a far less plausible choice then California in terms of the accessibility of relevant evidence.

The First Circuit in *Wool Masters, supra,* found that where only six to fourteen percent of defendant's total sales occurred in Massachusetts, and where plaintiff's action under the Trademark Laws arose out of defendant's sales throughout the country, plaintiff's claim "arose no more in Massachusetts than in any one of the many districts into which [defendant] Wool Masters sent their products." *Wool Masters* at 956. A similar finding was reached in *Maybelline v. Noxell,* 813 F.2d 901 (8th Cir.1987) in which the court rejected plaintiff's contention that venue was proper in Arkansas. Indeed the New York defendant's witnesses were all from New Jersey, New York and Pennsylvania; none of the product testing had been performed in Arkansas and only two percent of defendant's total sales were to Arkansas retailers. The *Maybelline* court concluded that plaintiff's claim did not arise in Arkansas.

In the present case, only 1.4 percent of defendant's total sales in 1986, were to Michigan distributors while approximately 24% of defendant's total sales in 1986 oc-

curred in Tennessee. Defendant's manufacturing operation is located in Tennessee along with any physical and documentary evidence relating to the manufactured products. In addition, defendant expects to call employees and former employees "to explain the custom and noncustom lettering business of defendant Chroma Graphics and to identify other products manufactured by Chroma Graphics during the approximately 13 years that the company has been in business." [Brief in Support of defendant's Motion to Dismiss or Transfer, p. 6]. The fact that a small percentage of defendant's products are distributed in Michigan does not warrant a finding that this district and Tennessee are equally plausible alternatives in terms of the availability of relevant evidence and the convenience of the defendant. Clearly the Eastern District of Michigan would be highly inconvenient to the defendant. This Court concludes, therefore, that the locus of plaintiff's claim is Tennessee.

For the reasons indicated above, this Court concludes that defendant Chroma Graphics is not "doing business" in Michigan for purposes of 28 U.S.C. § 1391(c) nor did plaintiff's claim arise in Michigan. Venue in this district is improper and defendant's Motion to Transfer this case to the Eastern District of Tennessee is hereby granted. This court's disposition of defendant's Motion to Transfer based on venue improperly laid, obviates the need to resolve defendant's Motion to Transfer based on convenience.

An Order shall enter accordingly.