TRENWYTH INDUSTRIES, INC.,
Trenwyth Industries (Midwest),
Inc., and Alan Kingston, Plaintiffs,

v.

The BURNS AND RUSSELL CO. OF
BALTIMORE CITY, a Maryland corpo-
ration, and the Burns and Russell Co.
of Baltimore City, a Pennsylvania cor-
poration, Defendants.

Civ. A. No. 88–1863.

United States District Court,
District of Columbia.

Dec. 16, 1988.

G. Franklin Rothwell, Raymond A. Kurz and Mary B. Stohler, Bernard, Rothwell & Brown, Washington, D.C., for plaintiffs.

Allen Kirkpatrick, III, William T. Bullinger, Cushman, Darby & Cushman, Washington, D.C., for defendants; John E. Sandbower, III, Phillips P. O'Shaughnessy, Alison D. Kohler, Sandbower, Gabler & O'Shaughnessy, P.A., Baltimore, Md., of counsel.

## OPINION

CHARLES R. RICHEY, District Judge.

The defendant in this matter, The Burns and Russell Company of Baltimore City

("Burns"),[1] has moved this Court for several forms of relief. First, Burns moves for a dismissal of this action on the grounds that the Court has no personal jurisdiction over it. Second, and in the alternative, Burns asks that this action be dismissed on the basis of improper venue under 28 U.S.C. § 1391. In the event the Court determines that a dismissal is not appropriate, Burns asks that this action be transferred to the District Court for the District of Maryland under 28 U.S.C. § 1406(a). Finally, Burns asks that the Court not exercise jurisdiction over a pendent state law claim accompanying plaintiff Trenwyth Industries, Inc.'s ("Trenwyth's") principal federal claim.[2]

For the reasons set forth herein, the Court declines to decide Burns' arguments respecting personal jurisdiction and pendent jurisdiction, but holds that because venue with respect to this action does not properly lie in this forum, this action shall be transferred to the District Court for the District of Maryland.

## FACTS

Both Trenwyth and Burns are engaged in the manufacture of glazed masonry blocks and tiles. This is a trademark action by Trenwyth principally alleging that Burns included photographs of masonry actually produced by Trenwyth in advertising materials that Burns submitted to an industry trade publication.[3] Trenwyth seeks damages under the Federal Trademark Law, 15 U.S.C. § 1125(a), as well as under statutes and common law of the District of Columbia relating to false representation and unfair competition. In addition, Trenwyth seeks declaratory judgments with respect to several issues arising out of

allegations by Burns that Trenwyth improperly used trade secrets and infringed several of Burns' patents. On July 1, 1988, approximately one week before the filing of this action, Burns filed a suit in Maryland state court which raised most, if not all, of the trade secret issues as to which Trenwyth seeks declaratory relief here.

The facts most pertinent to the motions before the Court are as follows. Burns is a Maryland corporation with its headquarters and principal place of business in Baltimore. All of Burns' manufacturing operations are in Baltimore, as are all of its officers and employees. Burns has no offices or employees in the District of Columbia, and is not registered to do business in the District of Columbia. Burns pays no income or property taxes to the District of Columbia. Burns' only advertising in the District of Columbia, other than through the *Sweets Catalog File*, apparently consists of (1) yellow page listings by both Burns and a subsidiary in the District of Columbia phone book, and (2) similar advertising in the *Blue Book Register*, also a trade publication distributed in the District of Columbia.

Burns contends that none of the witnesses who might be called at a trial of this matter reside in the District of Columbia. Instead, according to Burns, the bulk of its witnesses would be from Maryland (primarily Baltimore) while a few might come from other parts of the country.

Although Burns distributes its product throughout the country, it appears that during the last two years it has made only one, although possibly two, direct sales to District of Columbia residents. It has, however, made several sales to builders

---

**1.** Technically, there are two defendants here: the Burns that is incorporated in Maryland and the Burns that is incorporated in Pennsylvania. It appears, however, that for all practical purposes they are the same entity, and the plaintiff concedes as much in its complaint. Plaintiff's complaint at ¶ 7. In this opinion they will be treated as one entity.

**2.** As with Burns, Trenwyth also consists of separate corporate entities, the parent and its subsidiary (Trenwyth (Midwest)). The plaintiff Kingston is President of each. As with Burns, the

separate Trenwyth corporations will be treated as a single entity for purposes of this opinion.

**3.** The particular publication at issue is *Sweets Catalogue File*, an annual publication distributed to architects, contractors and builders around the country. It is alleged that Burns included a photograph of Pavillion Galleria, a commercial development in Little Rock, Arkansas, in its 1987 and 1988 *Sweets* advertising, but that Trenwyth, and not Burns, had actually supplied the materials used in Pavillion Galleria.

and contractors located in Virginia and Maryland, and has delivered the purchased products to job-sites located in the District of Columbia.

With respect to the *Sweets Catalog File*, it is prepared by the McGraw–Hill Company, located in New York, and is bound in Indianapolis, Indiana. It is distributed from Indianapolis to a national readership, including recipients in the District of Columbia. Approximately 21,918 copies of the 1988 edition of *Sweets* were distributed around the country; 222 were sent to readers in the District of Columbia.

Trenwyth is a District of Columbia corporation with its headquarters and principal place of business in Emigsville, Pennsylvania. It appears that Trenwyth does business with purchasers in the District of Columbia. Although Trenwyth claims that several of the witnesses it would call at a trial "live in and/or work in and around Washington, D.C.,"[4] none of the specific witnesses Trenwyth has named are actually residents of the District.

## DISCUSSION

### 1. *Personal Jurisdiction*

Burns' first contention is that this Court lacks personal jurisdiction over it, and that Trenwyth's complaint must be dismissed under Fed.R.Civ.P. 12(b)(2). Burns' contention requires an analysis of the extent to which the District of Columbia could constitutionally exercise jurisdiction over Burns in light of the facts recited above. Rule 4(e) of the Federal Rules of Civil Procedure provides that when a defendant is not a resident of the forum in which the federal district court sits, service on such person shall be had only "under the circumstances and in the manner prescribed" in the forum state's long-arm statute. The extent to which the District of Columbia's long-arm statute[5] may provide jurisdiction in this case is a constitutional question: the jurisprudence of "minimum contacts" reflects both a constitutional concern over the reasonableness of subjecting a person to suit in a jurisdiction with which he or she has had little or no contact, as well as a respect for fundamental principles of interstate federalism. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945).

The Court hesitates to decide a question of this nature unless it must. This is particularly so when, as here, it is a close question whether the District of Columbia's long-arm statute, as limited by the Fifth Amendment, would permit jurisdiction over Burns. Under these circumstances, the Court refers to the Supreme Court's suggestion in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979), that a federal court may pretermit the personal jurisdiction analysis by finding that venue is improper, when to do so would avoid a decision on a close jurisdictional question with constitutional implications. *See, e.g.*, *Transistor Devices, Inc. v. Tracor, Inc.*, 654 F.Supp. 601, 603 (E.D.N.Y.1987). Because this Court finds that venue as to this action does not lie in the District of Columbia, the issue of personal jurisdiction need not be decided.

### 2. *Venue*

Whether venue is proper in this Court involves two questions under 28 U.S.C. § 1391: (1) whether Burns can be deemed to be "doing business" in the District of Columbia; and (2) if not, whether Trenwyth's claim "arose" in the District of Columbia.[6]

*Sure Way Refrigerated Truck Transp. Brokers*, 510 A.2d 1032, 1033 (D.C.App.1986); *Rose v. Silver*, 394 A.2d 1368, 1369 (D.C.App.1978).

---

**4.** Affidavit of Alan Kingston, at p. 3. Mr. Kingston is Trenwyth's President and Chairman of the Board, and is an individual plaintiff in this action.

**5.** D.C.Code § 13–423. This provision has been construed to extend the jurisdiction of the local courts of the District of Columbia to the maximum extent permitted by due process. *Salins v.*

**6.** Section 1391(b), which provides for venue in federal question cases, reads:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may

■ This Court finds that, under the circumstances of this case, Burns is not "doing business" in the District of Columbia, and therefore cannot be deemed a resident under § 1391(b). This Circuit has adopted the view that a company may be deemed to be "doing business" for purposes of § 1391(c) only if the forum state could constitutionally require the company to comply with that state's licensing scheme. *See Eli Lilly and Co. v. Home Ins. Co.*, 794 F.2d 710, 721 (D.C.Cir.1986); *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant*, 760 F.2d 312, 316 n. 7 (D.C.Cir.1985) (quoting *Johnson Creative Arts v. Wool Masters, Inc.*, 743 F.2d 947, 954 (1st Cir.1984)). This standard essentially embodies a Commerce Clause analysis. *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 904–05 (8th Cir.1987).

Here, the facts suggest that the District of Columbia could not, consistent with the Commerce Clause, require Burns to subject itself to the District of Columbia's licensing scheme. It is undisputed that Burns has no offices or employees in the District of Columbia, and that Burns' advertising here consists only of the *Sweets* and *Blue Book* publications, as well as the Yellow Pages entry of Burns and its subsidiary.[7] Burns apparently has sold its product directly to only one (and perhaps two) District of Columbia purchasers within the last two years, and has derived revenue from these sales of approximately $29,047. Burns also has delivered approximately $13,527 worth of materials to job-sites in the District for non-District purchasers over the last two years. The total of these sales, $42,574, represents less than 1% of Burns' revenue for the period.

Under these circumstances, Burns has not sufficiently localized its operations here to justify any registration requirement that the District of Columbia might impose. The facts that Burns maintains no offices or employees in the District of Columbia, and that it generates only a minute portion of its revenue through sales that are even *related* to the District of Columbia, are central to this conclusion. *See Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 33, 95 S.Ct. 260, 267, 42 L.Ed.2d 195 (1974); *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 906 (8th Cir.1987); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 955 (1st Cir.1984); *Ford Motor Co. v. Chroma Graphics, Inc.*, 678 F.Supp. 169, 172 (E.D.Mich.1987). Consequently, Burns is not a resident of the District of Columbia for purposes of § 1391(b), because it is not "doing business" under § 1391(c). Venue does not lie in this Court under the first prong of § 1391(b).[8]

■ The next question as to venue is whether Trenwyth's "claim arose" in the District, such that venue would be proper

be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law. For purposes of defining the residence of a corporation under 1391(b)'s first prong, 1391(c) provides that a corporation is resident in its district of incorporation, any district where it is licensed to do business, or any district where it "is doing business." Because it is undisputed that Burns is not incorporated or licensed to do business in the District of Columbia, 1391(c) will place venue in this Court under 1391(b) only if Burns is "doing business" in the District of Columbia.

7. The affidavit of Burns' president, Russell Rich, indicates that neither Burns nor its subsidiary has paid for the advertisement for at least the last two years, and was not aware that it still was being carried until the matter was raised in this lawsuit.

8. Trenwyth contends that the decision in *Eli Lilly and Co. v. Home Ins. Co.*, 794 F.2d 710, 721–22 (D.C.Cir.1986) produces a different result. In that case, this Circuit's Court of Appeals found that the District of Columbia *could* constitutionally impose a registration requirement on insurance companies whose only contact with the District of Columbia was through the sale of policies by independent brokers located here, and that venue was therefore proper under 1391(c) and (b). However, in *Eli Lilly*, the Court of Appeals expressly noted that the practice of imposing such a registration requirement on such insurers was common, that it had never been upset by constitutional challenge, and that the Supreme Court has expressly construed the McCarran Ferguson Act, 15 U.S.C. § 1011 et seq. (1982), as removing the limitations upon the rights of states under the dormant Commerce Clause to regulate insurance companies. Accordingly, the Court finds the authorities cited above more helpful with respect to the facts actually before it.

here under the second prong of § 1391(b). The answer is no.

The leading construction of § 1391(b)'s "claim arose" language is the Supreme Court's opinion in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In *Leroy*, the Court recognized that in most cases it will be clear that a claim has arisen in a single jurisdiction, but noted as well the possibility that, in "unusual" cases, a claim might properly be deemed to have arisen in more than one jurisdiction. The Court held that in the latter situation, the choice of the particular venue in which the "claim arose" will be the venue most favorable to the defendant (but not the plaintiff) in terms of the availability of witnesses, the accessibility of relevant evidence, and general convenience. The plaintiff, on the other hand, will be entitled to a choice of venues in an "unusual" case only when the foregoing factors favor neither side: in other words, when the venues favor each party "with approximately equal plausibility." *Id.* 443 U.S. at 185, 99 S.Ct. at 2717. In *Leroy*, however, the Court found as a factual matter that only *one* venue there could plausibly be deemed the place where the "claim arose," and the Court accordingly did not analyze the extent to which the conveniences favored the defendant. *Id.* ("This case is not, however, unusual. For the claim involved has only one obvious locus— the District of Idaho.").

Here, regardless of whether Trenwyth views this as an "unusual" case in which the claim has arisen in multiple venues, or as a case in which the claim has obviously arisen in only one venue, it is clear under either analysis that the claim has *not* arisen in the District of Columbia under § 1391(b).[9]

Indeed, on the facts of this case, it is apparent that this action has arisen in only one venue, and that venue is the District of Maryland. Accordingly, the Court need not consider the factors specified in *Leroy* with respect to the location of the witnesses, relevant evidence and the convenience of the defendant.[10] In this case, nearly all of the actions or events giving rise to this lawsuit occurred at Burns' various corporate locations in Maryland. The allegedly illegal advertising for *Sweets* was prepared in Maryland, was mailed for publication from Maryland, and was received in Maryland as well as in the District of Columbia.[11] All of Burns' corporate officials involved with the activities in question are Maryland residents. Burns' manufacturing facilities are located in Maryland. Burns' previously filed action, which involves several of the trade secret issues raised in Trenwyth's complaint, was filed in the Circuit Court for Baltimore City. On these facts, the Court has difficulty seeing how the claims here can be deemed to have arisen anywhere *but* in Maryland. *See, e.g., JLG Indus. v. Mark Indus.*, 684 F.Supp. 1283, 8 USPQ2d 1697, 1699 (M.D. Pa.1988).

Because Burns is not "doing business" in the District of Columbia for purposes of 1391(c), and therefore is not a resident of the District of Columbia under 1391(b), and further because the District of Columbia is not the jurisdiction in which Trenwyth's "claim arose," the Court holds that venue with respect to this action is improper in this Court.

■ The next question is whether the Court should dismiss this action or transfer it to the proper venue under 28 U.S.C. § 1406(a). Section 1406(a) directs a district court to either dismiss a case for improper venue, or, "if it be in the interest of justice," to transfer the case to a district in which it could have been brought. Although the Court finds Trenwyth's effort

---

9. Trenwyth, while making the argument that venue is proper in this Court under 1391(b)'s second prong, does not detail its position with any real precision.

10. However, it is apparent that even under this balancing of the conveniences for "unusual" cases the facts of this case make clear that the District of Maryland is a more appropriate venue than the District of Columbia. *See Noxell v. Firehouse No. 1 Bar–B–Que Restaurant,* 760 F.2d 312, 315–17 (D.C.Cir.1985).

11. Indeed, while 222 copies of *Sweets* were mailed into the District of Columbia, 488 copies were mailed to Maryland addresses.

to lay venue in the District of Columbia somewhat stretched, it does not find the attempt "unreasonable." *See Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 760 F.2d 312, 317 (D.C.Cir.1985) (action dismissed where attempt to establish venue "unreasonable" under § 1391(b)). Accordingly, rather than a dismissal, the Court finds that the interest of justice supports a transfer of this action to the District Court for the District of Maryland.

### 3. *Pendent Jurisdiction*

In light of the Court's conclusion that venue does not lie in the District of Columbia, and its decision to transfer the action to the District Court for the District of Maryland, the Court is of the opinion that the more prudent course as to Burns' pendent jurisdiction argument is to refer that question to the transferee court. Further, it appears that the transferee court will be better situated to rule on whether abstention is appropriate as to Trenwyth's request for declaratory relief on the trade secret issues in light of the ongoing Maryland state court litigation.[12]

An order as to the foregoing shall issue of even date herewith.

### ORDER OF TRANSFER

For the reasons set forth in the Opinion of the Court issued of even date herewith, it is, by the Court, this 16 day of December, 1988,

ORDERED, that, because venue with respect to this matter does not lie in this Court, the above-captioned matter shall be transferred in its entirety to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1406(a).

---

12. Burns' abstention request was not included in its motion, but was instead raised in its supporting papers.